David A. DeLong, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 101264.   Promulgated March 27, 1941.

*Raymond A. Fox, Esq.*, for the petitioner.
*Homer J. Fisher, Esq.*, for the respondent.

### OPINION.

Opper: This proceeding was brought for a redetermination of a deficiency in petitioner's 1936 income tax in the amount of $986.53.

At the hearing respondent obtained leave to make the allegations conform to the proof and asserted an additional deficiency by reason thereof. Petitioner claims an overpayment of $209.70 on an alternative theory of the case.

The primary question involved is the character of a transaction wherein petitioner transferred 8 shares of stock in the American Broach & Machine Co. and received 782 shares of stock in the Sundstrand Machine Tool Co. and $14,000.

For approximately 18 years prior to the reorganization hereinafter set forth, taxpayer was the owner of 8 shares of stock of the American Broach & Machine Co. of Ann Arbor, Michigan (hereinafter referred to as the American Co.), which had a total of 297 shares issued and outstanding. All of the stock except the shares owned by petitioner were owned by Francis J. Lapointe, individually or as trustee, and his wife. Lapointe had been the president and general manager of the American Co. from its incorporation.

Prior to February 3, 1936, Lapointe approached petitioner and negotiated with him to exchange his stock in the American Co. for 782 shares in the Sundstrand Machine Tool Co. (hereinafter referred to as Sundstrand) in a proposed reorganization which Lapointe was negotiating. At one stage in the negotiation he offered to buy petitioner's stock for $10,000. He had to have petitioner's stock to go along with the deal and he was willing to pay him for it. Petitioner decided that he wanted $30,000 in Sundstrand stock or its cash equivalent for his American Co. stock, which Lapointe refused. In the latter part of January 1936 Lapointe and petitioner orally agreed that petitioner should receive 782 shares of Sundstrand stock or its equivalent in cash at $10 per share, and $14,000 in cash. The cash

was to be paid by Lapointe. Petitioner was not willing otherwise to go along with the reorganization.

The agreement was conditioned upon Lapointe effecting the proposed reorganization with Sundstrand. It was also part of the agreement that petitioner was to sign any papers at Lapointe's request for the consummation of the reorganization.

On February 3, 1936, Lapointe presented to petitioner and asked him to sign a document authorizing Lapointe "to sell and transfer" all petitioner's interest in the American Co. to the Sundstrand Co., "or any person or persons whatever and for the transfer to" him of 782 shares of Sundstrand and $14,000 in cash. Lapointe was also "for me and in my name, place and stead to make and pass all necessary acts of assignment, and to receive and give receipt for the consideration, money and stock arising from the exchange of stocks and the receipts of cash as above provided." Petitioner executed and delivered this instrument to Lapointe. The words "or any person or persons whatever" were used in order that Lapointe might, if necessary, have the stock issued to himself.

On the same day petitioner executed the reorganization agreement, under which the stockholders of the American Co. and Sundstrand agreed "to effect an exchange whereby the Stockholders [of the American Co.] shall acquire from Sundstrand Company, 29,145 shares of its capital stock, no par value, and the Sundstrand Company shall acquire from the Stockholders all the issued and outstanding capital stock of the American Company and  *  *  *."

As part of the consideration for the exchange it was further agreed that Sundstrand would enter into an employment contract providing for the employment of Lapointe by Sundstrand for a period of five years, at an annual salary of $15,000 per year.

It was further agreed that Lapointe and his wife would lease to the American Co. for five years the land and buildings in which the plant is located, with an option running to Sundstrand.

Petitioner also on that day executed transfer certificates for his stock in the American Co. in blank and delivered the stock certificates and the transfer certificates to Lapointe at Ann Arbor.

It did not make any difference to petitioner whether he received the cash from Lapointe or Sundstrand, or whether he transferred his stock to one or the other.

Immediately following the execution of these papers by petitioner, and on the 4th or 5th of February 1936, Lapointe took petitioner's American Co. stock certificates, the reorganization agreement, and the power of attorney with him to Chicago, where he consummated the reorganization on behalf of the stockholders of the American Co. with Sundstrand.

The reorganization agreement is dated January 31, 1936, but was executed by petitioner on February 3, 1936, and the reorganization consummated a day or two later. The dating of the reorganization agreement as of January 31, 1936, was for accounting purposes.

Petitioner took no part in the negotiations with the Sundstrand Co. His dealings were with or through Lapointe.

The reorganization agreement called for the stockholders of the American Co. to pay the expenses for an audit of the books and an appraisal of the assets of the American Co. Petitioner contributed no part of that expense or any of the expense incident to the reorganization.

The reorganization was effected by the transfer to Sundstrand of 297 shares of the American Co. for 29,145 shares of Sundstrand stock.

On February 6, 1936, after the reorganization was consummated in Chicago, Lapointe delivered to petitioner a stock certificate for 782 shares of Sundstrand stock and paid him $14,000 out of his own money. The stock was issued direct to petitioner.

The fair market value of Sundstrand Co. stock on February 3 and February 6, 1936, was $10 per share.

Petitioner paid $400 for 4 shares of his American Co. stock and was given 4 shares at the time of the incorporation of the American Co. in 1918. Its par value was $100 per share.

In his return, showing a net income of $12,708.57, petitioner treated the transaction as a sale of his 8 shares of American Co. stock for cash of $14,000 and 782 shares of Sundstrand stock at $10 per share, with 30 percent of the gain to be recognized.

In disallowing this respondent in his notice of deficiency stated:

Based on the facts of record it is the opinion of this office that the exchange of stocks is an exchange in reorganization as contemplated under Section 112 (g) of the Revenue Act of 1936, from which no gain or loss is recognized. * * *

Inasmuch as the cash of $14,000.00 was paid to you by Francis J. Lapointe, majority stockholder of the American Company, and not by the Sundstrand Company, and inasmuch as such payment was not a part of the agreement of reorganization dated January 31, 1936, nor did other stockholders of the American Company receive a similar cash payment, it is held that such payment constitutes ordinary income taxable in full as adjusted in item (b) of this statement.

Your contention that the $14,000.00 constituted part of the sale price of a capital asset, or in the alternative was received as part of an exchange in reorganization, cannot be conceded.

Even though we assume, as urged by respondent, that petitioner participated in the plan of reorganization, and obtained from that source the Sundstrand stock in exchange for his American Co. shares, it does not follow that the additional consideration he received for selling his stock was ordinary income as opposed to capital gain. There is no requirement of which we have been made aware that the sales price

of an article can not be paid in whole or in part by one other than the vendee. It seems to us to be apparent from the record that petitioner disposed of his American Co. stock and received in exchange 782 shares of Sundstrand stock and $14,000 in cash. "That was the crux of the business" to petitioner, as it should be to us. *Griffiths* v. *Helvering*, 308 U. S. 355, 357. We see no reason why the total consideration should not be treated as the sales price of the stock, and the excess over cost as capital gain. *James Brown*, 10 B. T. A. 1036, 1054.

To the extent, however, that the stock received came to petitioner in what was concededly a reorganization subject to the nonrecognition provisions of section 112, the gain is not subject to tax. In computing the proper amount payable, therefore, the total capital gain should be apportioned between the stipulated value of the stock and the cash, and only that portion of the gain attributable to the cash should be included as presently taxable.

It is true a somewhat different version of the same facts has been arrived at. *Lapointe* v. *United States* (U. S. Dist. Ct., E. Dist. Mich., Feb. 28, 1941). But for such variation the difference in presentation and record may be largely responsible. At any rate there is no indication that such inconsistencies as may exist will work any hardship or injustice on either party to this proceeding.

*Decision will be entered under Rule 50.*