Ray Guzowski and Donna E. Guzowski, et al. 1 v. Commissioner. Guzowski v. CommissionerDocket Nos. 6042-64 - 6046-64, 2718-65 - 2721-65.United States Tax CourtT.C. Memo 1967-145; 1967 Tax Ct. Memo LEXIS 115; 26 T.C.M. (CCH) 666; T.C.M. (RIA) 67145; June 30, 1967Charles D. Savage, 2150 Guardian Bldg., Detroit, Mich., for the petitioners. Carl W. Kloepfer, for the respondent. TANNENWALDMemorandum Findings of Fact and Opinion TANNENWALD, Judge: Respondent determined the following deficiencies and additions to petitioners' tax; petitioners contest the deficiencies and additions to tax and claim the following overpayments: DocketOver-AdditionNo.PetitionersYearDeficiencypaymentto tax6042-64Ray and Donna E. Guzowski1958$ 1,360.6419592,972.4119601,974.59$ 155.1119622,347.986043-64Donald and Donna Guzowski19581,855.7019591,803.2819602,570.78206.6019621,959.226044-64Frank and Theresa Guzowski19586,991.5619596,154.07196013,227.5011,695.21196212,521.886045-64Don-Ray Tool & Die, Inc.f/y 2/28 19610$1,415.95f/y 2/28 19636,968.93348.456046-64Lorriaine Guzowski19586,993.9919595,552.8219605,418.45536.0019622,933.612718-65Lorraine Guzowski19614,307.00941.822719-65Ray and Donna Guzowski19611,629.961,387.392720-65Donald and Donna Guzowski19611,933.431,167.362721-65Frank and Theresa Guzowski196111,882.6511,376.29*117 Because of concessions by both parties, only three issues remain for our consideration: (1) Was the stock in petitioner Don-Ray Tool and Die, Inc. owned by a partnership, so that the corporation was ineligible to elect to be taxed as a small business corporation during the fiscal years ending February 28, 1959 through 1962? (2) Is Don-Ray Tool and Die, Inc. entitled to deductions for compensation paid to its officers in excess of the amounts allowed by respondent? (3) Is Lorraine Guzowski entitled to deductions for expenses connected with her singing activity during the years 1958 to 1962 in amounts exceeding her income? General Findings of Fact Some of the facts are stipulated and are found accordingly. At the time of the filing of the petitions herein, Frank Guzowski, his wife, Theresa Guzowski and Lorraine Guzowski had their legal residences in St. Clair Shores, Michigan, while Ray Guzowski, his wife, Donna Guzowski, Donald Guzowski, and his wife, Donna Guzowski, had their legal residences in Warren, Michigan. Frank and Theresa, Ray and Donna, and Donald and Donna filed their respective joint returns and Lorraine filed her individual returns for the years in question*118 with the district director of internal revenue, Detroit, Michigan. Don-Ray Tool and Die, Inc. (hereafter referred to as the "Corporation") had its principal office in Warren, Michigan, at the time of the filing of the petitions herein. It filed corporate returns for the fiscal years ended February 28, 1957, 1958, and 1963 and small business corporation returns for the fiscal years ended February 28, 1959, 1960, 1961, and 1962 with the district director of internal revenue, Detroit, Michigan. Donald, Ray, and Lorraine are the three children of Frank and Theresa. Findings of Fact - Issue No. 1 On January 2, 1952, Frank, Donald, Ray, and Lorraine formed a partnership known as Don-Ray Tool and Die Company (hereafter referred to as the "Partnership") to manufacture and sell tools and dies. Frank had a 55 percent interest, while Donald, Ray, and Lorraine each held a 15 percent interest. The articles of partnership specifically provided that the Partnership was to commence January 1, 1952 and that it was to continue for a period of five years except if terminated at an earlier date as provided in the articles of partnership. Neither a renewal certificate nor a certificate of discontinuance*119 was ever filed by the Partnership. The Partnership discontinued its manufacturing operations on February 28, 1953. By June 30, 1953, all operations were discontinued and thereafter the Partnership was, at all times, completely inactive. A final financial report of the Partnership was prepared for the fiscal year ended June 30, 1953. Prior to September 2, 1958, disposition was made of all of its assets and liabilities. The Corporation was incorporated on March 6, 1953 to take over the business conducted by the Partnership. At that time, the Corporation issued 100,000 shares to the Partnership. The minutes of the first meeting of the incorporators and shareholders of the Corporation read in pertinent part as follows: The following shareholders were present: Frank Guzowski, Donald F. Guzowski, Raymond C. Guzowski and Lorraine J. Guzowski all doing business as Don Ray Tool and Die Company, a co-partnership, representing 100,000 shares, being all of the subscribers named in the Articles of Incorporation and all of the shareholders of said corporation. From the date of incorporation through the years in question, except for the period March 1, 1955 to February 28, 1956, when Donald*120 was neither a director nor an officer, the directors of the Corporation were Frank, Donald, Ray, and Lorraine, while the officers were Frank, as president, Donald and Ray, as vice presidents, and Lorraine, as secretary and treasurer. No other person has served as a director or officer of the Corporation. At no time were shares of the Corporation held by anyone except the Partnership, Frank, Donald, Ray, and Lorraine. On December 2, 1958, the Corporation timely filed an election to be taxed as a small business corporation. The election was signed by Frank, Donald, Ray, and Lorraine as the sole shareholders of the Corporation. Frank was shown as owning 55 percent of the stock, while Donald, Ray, and Lorraine were each shown as owning 15 percent. Opinion - Issue No. 1 Respondent disallowed the Corporation's election to be taxed under Subchapter S, 2 claiming that the Partnership owned the stock and relying on section 1.1371-1(d)(1), Income Tax Regs., and Rev. Rul. 59-235, 1959-2 C.B. 192. He concedes that the alleged ownership of the stock by the Partnership is the only reason for voiding the election. Petitioners do not dispute the validity*121 of respondent's regulation or Revenue Ruling, but rely solely on the claim that the Partnership had transferred the stock to the individuals and that, therefore, at all times from and after September 2, 1958, the statutory requirements for the election had been met. In the final analysis, our decision turns on whether paper transfer of the shares from the Partnership to the individual Guzowskis was required. The Partnership discontinued manufacturing operations by February 28, 1953 and all other operations by June 30, 1953. Sometime after that date all of the assets were disposed of. The term of the Partnership expired on January 2, 1957, and there is not one scintilla of evidence that there was any intent or action on the part of the partners to extend the term. Long prior to September 2, 1958 - the critical date for our purposes - the Partnership was in limbo. The only possible remaining vestige of partnership identity stems from the fact that a certificate for 100,000 shares of stock of the Corporation was registered in the name of the Partnership. Even assuming that this certificate had*122 not been cancelled and new certificates had not been issued in the names of the individual partners - as to which there was considerable confusing and conflicting testimony - we are satisfied that the ownership of the stock had passed to the partners individually. Stock certificates and stock record books are only one indication of who the real shareholders are. Bijou Park Properties, 47 T.C. 207 (1966). Sections 761 and 7701 define "partnership" as an unincor porated organization "through or by means of which any business, financial operation, or venture is carried on." Cf. sec. 1.708-1, Income Tax Regs. The touchstone of a partnership is activity. Cf. Seattle Renton Lumber Co. v. United States, 135 F. 2d 989 (C.A. 9, 1943); Albert Bettens, 19 B.T.A. 1166 (1930); Royal Wet Wash Laundry, Inc., 14 B.T.A. 470 (1928). Mere common ownership of property is not to be equated with the existence of a partnership. Cf. George Rothenberg, 48 T.C. - (June 21, 1967); see 6 Mertens, Law of Federal Income Taxation (Zimet*123 Revision), sec. 35.02. We have previously held that the absence of formal steps to change the identity of a stockholder is not critical in determining the applicability of Subchapter S. Old Virginia Brick Co., 44 T.C. 724 (1965), affd. 367 F. 2d 276 (C.A. 4, 1966). We hold that, under the circumstances of this case, the stock of the corporation was owned by the four Guzowskis in their individual capacities at all times from and after September 2, 1958 and that the Subchapter S election was valid. Findings of Fact - Issue No. 2 To the extent applicable, the findings of fact with respect to Issue No. 1 are incorporated herein by reference. The Corporation had taxable income or operating losses and paid salaries to its officers as follows: ProfitTaxable year endingFrankDonaldRayLorraineor (loss)2-28-54$26,000$20,800$15,600$10,400$44,293.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,0009,0006,0004,000( 32,358.12)2-28-565,7251,2253,5252,875( 59,867.41)2-28-57 - Regular salary17,8009,3009,3509,3502-28-57 - Bonus15,00015,00015,00015,00030,922.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,80010,40010,40010,400( 81,975.21)2-28-5918,40010,40010,40010,400( 68,118.18)2-28-6018,20010,40010,40010,400( 30,810.28)2-28-6120,25012,55012,55010,400( 45,032.70)2-28-6220,80013,00013,00010,400( 71,291.80)2-28-6320,80013,00013,00010,400( 55,253.37) **124 The bonuses for fiscal 1957 were paid in December 1956. Substantially all operations of the Corporation were discontinued during the period from October 1954 to February 1956 because of labor difficulties. Frank went to work at the age of 15 and, from 1926 until he formed his own business, he worked for various companies engaged in the automobile body or tool and die business. At all times pertinent, he was the principal operating officer of the Corporation. He performed his duties on a full-time basis. Lorraine graduated from high school in 1948 and attended the University of Michigan for one year. Upon leaving the University of Michigan, she went to work for the Ajax Bolt and Screw Company as a file clerk. She left Ajax in 1949 and went to work for her father. Her duties with her father and later with the Partnership and then the Corporation were full-time and consisted of running the entire office, which included supervising one or two girls. She took care of all the telephone calls, the receptionist work, invoicing, typing up quotes and invoices, making out shipments, posting*125 time cards, doing the payroll, keeping the books, and anything else that is done by an office manager. She also kept daily accounting records which were reviewed by the company's certified public accountant once every three months. Upon graduation from high school in 1944, Don went to work with his father. One summer, while in high school, he attended the Donnelley Powers Pattern Making School, graduating as an apprentice patternmaker. His duties while working for the Corporation and the predecessor partnership were full-time and consisted of processing blueprints, drawing up small parts, gathering stock, running some of the machines, and contacting customers. Ray graduated from high school in 1947 and attended Michigan Normal College for two years. He then worked with his father until he was called into military service in 1951. In 1953, he returned and worked for the Partnership full-time until the fall of 1955 when he enrolled in the Detroit Institute of Technology. After graduation, he enrolled in the Detroit College of Law. During the fiscal year ending February 28, 1957, Ray attended school in the morning and worked for the Corporation in the afternoon and evening. His duties*126 were those of an outside contact man; in addition, he did layout work in connection with the processing of steel. The Corporation at no time paid any formal dividends during any of its fiscal years. No bonuses, other than vacation pay, were paid by the Corporation to any employee other than the four officers. Respondent determined that the bonus paid to each of the Guzowskis and $4,700 of the regular salary of Ray were not deductible as an ordinary and necessary business expense but were a distribution of profits. The bonuses of $15,000 paid to each of the four Guzowskis in December 1956 constituted unreasonable compensation. Reasonable compensation for Ray Guzowski for the fiscal year ended February 28, 1957 was $9,350. Opinion - Issue No. 2 The reasonableness of the compensation paid to the Guzowskis in the fiscal year ending February 28, 1957 is only in issue with respect to determining the amount of the corporate loss in the fiscal year ending February 28, 1958 which can be carried forward to the fiscal year ending February 28, 1963. Respondent disallowed a deduction for amounts paid to Frank, Donald, Ray, and Lorraine in excess of $17,800, $9,300, $4,650, and $9,350, *127 respectively. The burden of proving that a larger amount should be allowable as an ordinary and necessary business expense is on the taxpayer. Botany Worsted Mills v. United States, 278 U.S. 282 (1929). Petitioner attempts to switch this burden of proof to respondent, citing E. Wagner & Son v. Commissioner, 93 F. 2d 816 (C.A. 9, 1937), affirming a Memorandum Opinion of this Court, and Glenshaw Glass Co., Inc., a Memorandum Opinion of this Court dated Oct. 15, 1946, affirmed per curiam 175 F. 2d 776 (C.A. 3, 1947), as support for the proposition that a salary voted by the board of directors is presumed reasonable. Neither of the cited cases stands for this proposition. In Wagner, the taxpayer indeed made precisely this argument. In response, the Ninth Circuit stated: "Assuming, without deciding, that such rule is correct, it is evident that the evidence overcame the effect of the presumption." The court went on to note that the issue was one of fact and that the burden of proving reasonableness was on the taxpayer. In Glenshaw, we commented that, *128 if the board of directors were independent, we would be reluctant to substitute our judgment of reasonableness for the board's. The board of directors in the instant case clearly was not an independent body. Petitioner corporation's attempt to satisfy its burden of proof was vague and insufficient. There was some testimony as to the qualifications of each of the Guzowskis, the long hours worked, the tight labor market, and the tight delivery schedule, but much of the testimony was general. No testimony was offered as to prevailing rates of compensation for comparable positions in comparable concerns, except for Donald's statement that he was offered a position as an outside salesman on a commission of 5 percent where he might earn up to $30,000. The only other testimony offered was Frank's statement that the other men employed by the Corporation received $3.00 to $3.75 per hour. Long hours and hard work are not in and of themselves determinative. The record shows that the bonuses were paid in December 1956, close to the end of the fiscal year - at a time when profits for the year could be ascertained with reasonable accuracy - and that similar bonuses were not paid to any of the*129 Guzowskis in other years or to other employees in fiscal 1957. Nor is there any basis for concluding that the bonuses were compensation to the Guzowskis for services rendered in the previous fiscal year, when their salaries were very low, in view of the fact that the Corporation was not operating during that year. On the basis of the entire record, we cannot say that the Corporation has met its burden of proof that the $15,000 bonuses were compensation and not a disguised distribution of current earnings and profits, and we so hold. On the other hand, we think there is sufficient evidence to justify the payment of a $9,350 salary to Ray. Although in theory he was a part-time employee, in point of fact he put in the equivalent of a full working day. He had important duties which he discharged to the benefit of the Corporation. On all the facts revealed by the entire record before us, we hold that the Corporation has met its burden of proof on this score. The respondent's determination as to the disallowance of amounts paid by the Corporation as compensation is sustained as to the $15,000 bonuses and rejected as to the disallowance in respect of Ray's salary. Findings of Fact - *130 Issue No. 3 Lorraine first received income from singing in 1953 or 1954. She has sung on radio stations and in night clubs in various cities and has auditioned with Metro-Goldwyn-Mayer. As a member of the union, she was always paid the union scale for her singing. Her engagements were confined to nights and weekends. For a one-night engagement she received $15 to $25. For a week's engagement she would receive $100. Lorraine had her tonsils removed in 1958. She also had another ailment, idiopathic edema. As of the time of trial, Lorraine had received no income from singing since 1960. On her tax returns for the years 1954 through 1960, Lorraine reported income and expenses in connection with her singing activity as follows: YearReceiptsExpensesLoss1954$ 250.00$ 676.80$ 426.801955512.001,069.15557.151956525.001,495.50970.501957625.001,215.05590.051958495.001,347.01852.011959608.331,766.171,157.8419601,195.001,646.49451.491961None317.88317.881962None148.50148.50 Respondent disallowed Lorraine's deductions for expenses connected with singing for each of the years 1958 through 1962*131 to the extent that the expenses exceeded the receipts from her singing activity. Lorraine was not engaged in a trade or business during the years in question. Opinion - Issue No. 3 Respondent contends that Lorraine was not in the trade or business of singing and that her losses from this purported enterprise are therefore not deductible. In the event we should find Lorraine in the trade or business of singing respondent further contends Lorraine has not substantiated her losses except for $36 in 1961 and $36 in 1962. Because we agree with respondent's first contention, we do not reach his second contention. Whether Lorraine may deduct her losses on the ground that they were connected with the carrying on of a trade or business is an issue of fact. Higgins v. Commissioner, 312 U.S. 212 (1941). At the outset, we note that her full-time employment by the Corporation does not preclude a determination that she was engaged in another trade or business. Thacher v. Lowe, 288 Fed. 994 (S.D.N.Y. 1922). The key element is whether she had a good faith intention to make a profit in the years in question. Frederick A. Purdy, 12 T.C. 888 (1949).*132 The substantial losses resulting from her singing activities before and during the years in question are not determinative, but they may properly be taken into account in evaluating her testimony that she had such intention. Cf. Lamont v. Commissioner, 339 F. 2d 377 (C.A. 2, 1964), affirming a Memorandum Opinion of this Court; Henry P. White, 23 T.C. 90 (1954), affd. 227 F. 2d 779 (C.A. 6, 1955); Frederick A. Purdy, supra. Lorraine was the sole witness on this issue. She testified that she had several singing engagements, but we were not favored with any specifics as to the circumstances or the details of the arrangements respecting those engagements. Nor do we have any evidence, other than her general statement, upon which we might base an evaluation of the impact of Lorraine's illnesses on her asserted business endeavors. On the record before us, we are not satisfied that she had the requisite intention that her singing activity constituted a trade or business during the years in question and we hold that it did not. Cf. Riddle v. United States, 205 F. Supp. 357 (D. Colo. 1962); Henry G. Owen, 23 T.C. 377 (1954);*133 James M. Osborn, 3 T.C. 603 (1944). Decisions will be entered under Rule 50. Footnotes1. Cases of the following petitioners are consolidated herewith: Donald Guzowski and Donna Guzowski, Docket No. 6043-64; Frank Guzowski and Theresa Guzowski, Docket No. 6044-64; Don-Ray Tool & Die, Inc., Docket No. 6045-64; Lorraine Guzowski, Docket No. 6046-64; Lorraine Guzowski, Docket No. 2178-65; Ray Guzowski and Donna Guzowski, Docket No. 2719-65; Donald Guzowski and Donna Guzowski, Docket No. 2720-65; and Frank Guzowski and Theresa Guzowski, Docket No. 2721-65.↩2. Secs. 1371 through 1377. All references are to the Internal Revenue Code of 1954.↩*. Per tax return and hence not necessarily determinative of profit or loss for tax purposes.↩