Jerome Prizant and Doris Prizant v. Commissioner.
Prizant v. Commissioner
Docket No. 3681-67.
United States Tax Court
T.C. Memo 1971-196; 1971 Tax Ct. Memo LEXIS 136; 30 T.C.M. (CCH) 817; T.C.M. (RIA) 71196; August 10, 1971, Filed *136 (1) DP sold certain stock in 1963 in order to make a loan to a corporation. She received a noninterest-bearing demand note and an agreement in which the corporation acknowledged her loan and promised to pay any additional amounts necessary for her to repurchase the number of shares she sold in order to make the loan. Held, DP realized a capital gain in 1964 when, in accordance with the agreement, she received payments in excess of the amount loaned by her. (2) JP was a member of a partnership, which in 1958 transferred substantially all of its assets and its business activity to a corporation. Thereafter, the partnership continued to hold some assets, made loans to the corporation, and filed Federal partnership returns. In 1963, it was issued certain section 1244 stock. The partnership was dissolved and such stock was distributed to the partners. The stock became worthless in 1965. Held, JP was not entitled to ordinary loss treatment with respect to the stock when it became worthless in 1965 because he was not an individual to whom sec. 1244 stock was issued within the meaning of sec. 1244(a), I.R.C. 1954. Russell L. Davis and Maurice P. Wolk, for th for the respondent. SIMPSON
Memorandum *137 Findings of Fact and Opinion SIMPSON, Judge: The respondent determined deficiencies in the income tax of the petitioners of $18,645.12 for 1964 and $2,496.00 for 1965. The issues for decision are (1) whether the petitioner, Doris Prizant, realized a gain, which is taxable as ordinary income, as a result of her loaning money to a corporation and being repaid more than she loaned; and (2) whether the petitioners are entitled to treat the loss on certain stock as an ordinary loss under section 1244 of the Internal Revenue Code of 1954, [1] relating to small business stock. Findings of Fact Some of the facts have been stipulated, and those facts are so found. The petitioners, Jerome Prizant and Doris Prizant, were husband and wife, who maintained their residence in Highland Park, Illinois, at the time of filing their petition in this case. They filed their joint 1964 and 1965 Federal income tax returns with the district director of internal revenue, Chicago, Illinois. They used the cash receipts and disbursements method of accounting and filed their returns for those years on a calendar year basis. Jerome Prizant will be *138 referred to as Jerome, and Doris Prizant will be referred to as Mrs. Prizant. H. G. Prizant and Co. (the partnership) was a family partnership, organized on July 1, 1952, by Harry G. Prizant and his son, Jerome. Sometime during the fiscal year ending June 30, 1955, Sheldon H. Prizant, Jerome's brother, became a member of the partnership. The partnership's principal business activity consisted of designing, fabricating, and installing air conditioning and ventilation systems for multi-storied structures. In May 1958, H. G. Prizant and Company (the corporation) was formed. Thereafter, at all relevant times, Jerome was 818 employed by the corporation. At such time, the partnership transferred a substantial amount of its assets and its business activity to the corporation in exchange for 100 shares of $100 par value common capital stock of the corporation. Such stock was continuously held by the partnership until June 30, 1964. The partnership, during the period prior to January 2, 1963, held cash in addition to the common stock of the corporation, and made loans to the corporation during such period in the aggregate amount of $42,000. On January 2, 1963, at a special joint meeting of *139 the board of directors and the shareholders, the corporation was authorized to increase its capital structure. On the same date, pursuant to a plan conforming with the requirements of section 1244, the corporation offered for purchase 2,600 shares of common capital stock at a total subscription price of $260,000. Jerome's mother, Pauline Prizant, purchased 2,180 of such shares at a purchase price of $218,000. The remaining 420 shares were issued to the partnership in exchange for cancellation of debts owed the partnership in the amount of $42,000, and there was a corresponding increase in the capital account of the corporation. On and after January 2, 1963, the partnership transacted no business, and its only assets were 520 shares of the corporation's common capital stock. On or about October 10, 1963, the corporation was in need of approximately $45,000 with which to meet its payroll. Apparently, neither Jerome nor the other shareholders had ready access to such sum. Jerome asked his wife to sell her stock in the Livingston Oil Company and loan the corporation $45,000. She then owned 7,350 shares of such stock, and she was reluctant to sell it, for she expected it to increase in *140 value. In discussions with Jerome, she indicated that she would not sell such stock unless the corporation would promise to repay her in such a way that she would be put back in the market with the number of shares of Livingston Oil that she had originally purchased. On October 10, 1963, Mrs. Prizant sold 7,350 shares of Livingston Oil stock for the net amount of $108,417.32. Of the total proceeds realized on the sale, $57,205.50 was applied to Mrs. Prizant's margin account with her brokerage house, the stock having been purchased on margin. Of the remainder of such proceeds, $45,000.00 was delivered to the corporation. The corporation, in return for the loan of $45,000, gave Mrs. Prizant a noninterestbearing demand note in the amount of $45,000 dated October 10, 1963, and also issued to her a letter agreement (the agreement) dated October 10, 1963. The agreement provided in part: In consideration of the loan you have made to H. G. Prizant and Company it is mutually agreed that you shall suffer no monetary loss as it is understood that you have had to sell certain Stocks in order to obtain the funds for this loan. The H. G. Prizant and Company hereby agrees to reimburse you for all *141 monies that may be required for you to repurchase SEVEN THOUSAND (7000) shares of Livingston Oil at the time the loan is paid back. In addition, H. G. Prizant and Company will reimburse you for all selling and buying costs of said Stock, such as commission fees, etc. In the event the market price of said Stock is lower than at the time it was sold, H. G. Prizant and Company will then be obligated to pay the principal amount of the loan and commission expenses only. During the period October 24, 1963, through March 6, 1964, the corporation paid to Mrs. Prizant the aggregate amount of $77,500. Of such sum, $45,000 was reflected on the corporation's books as "Note payable," and $32,500 was reflected on such books as "Interest expense." No other amounts were paid by the corporation to her. On its United States corporation income tax return for the taxable year ended April 30, 1964, the corporation deducted as interest expense $32,500. Mrs. Prizant did not include such amount on her 1964 return. During the period October 24, 1963, to March 19, 1964, Mrs. Prizant purchased on margin 6,400 shares of Livingston Oil stock with amounts paid to her by the corporation. The total purchase price, *142 plus brokerage fees in the approximate amount of $1,700.00, was $113,176.78. As a margin requirement, she paid $76,180.00 toward the purchase of such stock. On June 30, 1964, the partnership transferred all of the stock it held in the corporation to Jerome, Harry Prizant, and Sheldon Prizant in accordance with their respective interests in the partnership. Jerome's share of such stock was 50 shares 819 of the original issue and 105 shares of the stock issued in 1963. The corporation became insolvent on September 9, 1965, and on their 1965 joint income tax return, the petitioners claimed an ordinary loss deduction in the amount of $10,500 with respect to the worthlessness of the stock issued in 1963. On such return, the petitioners also reported the sale of 7,471 shares of Livingston Oil stock at a gross sales price of $79,438, having a cost basis of $111,669 and a date of acquisition of March 19, 1964. Opinion The issues for decision are (1) whether the petitioner Mrs. Prizant realized a gain in 1964, and if so, whether such gain is taxable as ordinary income; and (2) whether in 1965, the petitioner Jerome Prizant was entitled to an ordinary loss deduction under section 1244. Mrs. *143 Prizant initially takes the position that the amounts she received from the corporation in excess of the principal amount of her loan constituted a restoration of her capital. As we understand her argument, it is to the effect that the transactions in which she sold her stock, made a loan to the corporation, received payments from the corporation, and purchased stock should be treated for tax purposes as if she had loaned the stock itself. This Court rejected a similar contention in Anna M. Harkness, 1 B.T.A. 127 (1924), wherein we said at 130: It seems to us to be fundamentally unsound to determine income tax liability by what might have taken place rather than by what actually occurred. Even though the practical effect may be the same in either case, the resulting tax liability may be quite different. * * * In effect, Mrs. Prizant is asking us to provide nonrecognition treatment for the series of transactions in which she engaged. Although there may have been ways in which she could have arranged such transactions to avoid tax consequences, we cannot, for that reason, ignore what was done. Under section 1002, any gain realized on the sale or exchange of property must be recognized, *144 unless the gain comes within one of the statutory exceptions. Mrs. Prizant did not merely transfer her Livingston Oil stock to the corporation; she sold 7,350 shares then owned by her and received the proceeds of the sale, which she was free to use in any manner that she desired. Approximately $57,000 was used to discharge her margin account with her broker, and approximately $6,000 was apparently retained by her. Although she was under no obligation to make a loan to the corporation, she did, in a separate transaction, deliver $45,000 to the corporation as a loan. When the corporation repaid her, it did so with money, not stock, and although the amount of the repayment was determined by the then value of the Livingston Oil stock, she was free to use such money as she wished. She did reinvest it in Livingston Oil stock, but she was not required to do so. Under these circumstances, none of the statutory exceptions is applicable to this series of transactions, and we cannot overlook their tax consequences. Mrs. Prizant sold stock at a gain and made a loan which was repaid to her at a gain. Those gains must be recognized for tax purposes. The petitioner urges that in theory her case *145 is similar to Cleary v. United States, 232 F. Supp. 828 (W.D. Pa. 1964). In Cleary, the stock itself was pledged as collateral to borrow funds that Mr. Cleary then loaned to a friend; in time such stock was sold by the pledgee. Subsequently, a similar number of shares of the same stock was purchased by the friend and returned to Mr. Cleary. The Commissioner sought to tax Mr. Cleary on the increase in market value of the stock between the time it was loaned and the time it was returned. The court disregarded the form of the transaction and held that in substance the stock was loaned by Mr. Cleary to his friend, that the stock was fungible and the shares returned were equivalent to the original shares held by Mr. Cleary, and that there was no gain or loss with respect to the return thereof. However, in the present case, the stock was sold by Mrs. Prizant, cash was loaned, and cash was repaid. Thus, the transactions in the two cases were significantly different. Though Mrs. Prizant's gain on the loan must be recognized, it is not taxable as interest. Interest, for tax purposes, is an amount received as compensation for the use of money. Sec. 61(a)(4); sec. 1.61-7, Income Tax Regs.; Deputy v. DuPont, 308 U.S. 488 (1940); *146 Old Colony R. Co. v. Commissioner, 284 U.S. 552 (1932). "Interest," for tax purposes, means interest in the ordinary and usual sense. Old Colony R. Co. v. Commissioner, supra.Ordinarily, the amount of interest varies with the amount of the loan 820 and its duration. When obligations are sold at original discount, the discount represents interest even though it is paid on the redemption of the obligations. Rosen v. United States, 288 F. 2d 658 (C.A. 3, 1961). When a right to receive interest is sold, the amount received therefor is also taxable as interest. Fisher v. Commissioner, 209 F. 2d 513 (C.A. 6, 1954), affg. 19 T.C. 384 (1952), cert. denied 347 U.S. 1014 (1954). If the compensation for the use of money is in the form of a right to share in the profits of an enterprise, such compensation is also treated as interest. Dorzback v. Collison, 195 F. 2d 69 (C.A. 3, 1952); Erwin de ReitzesMarienwert, 21 T.C. 846 (1954). In all these situations, the amounts were treated as interest because they were found to be compensation for the use of money. However, in Old Colony R. Co. v. Commissioner, supra at 561, the Supreme Court said that the term "interest" does not "refer to some esoteric *147 concept derived from subtle and theoretic analysis." In Deputy v. DuPont, supra, the taxpayer had borrowed certain shares of stock; he agreed to repay the stock and during the period of the loan to pay the lender an amount equal to the dividends on the stock plus the taxes on such income. The Court stated at 497: "But although an indebtedness is an obligation, an obligation is not necessarily an 'indebtedness' within the meaning of § 23(b). Nor are all carrying charges 'interest'." It held that the payments in lieu of dividends were not interest and were not deductible as such. Since those decisions by the Supreme Court, there have been many cases holding that payments for the use of money are interest, but those decisions by the Supreme Court are still standing and establish the proposition that not all amounts received by a lender in connection with a loan are to be treated as interest. Cf. Lubin v. Commissioner, 335 F. 2d 209 (C.A. 2, 1964), revg. a Memorandum Opinion of this Court. The arrangement in this case is quite unusual and presents us with an unusual problem; namely, was the agreement by the corporation additional consideration for the sale of the stock by Mrs. Prizant *148 or compensation for the loan by her? It appears that if she had possessed sufficient funds to make the loan, she would have done so without charging the corporation any interest or compensation for the use of her money. She was not seeking to make a profit on the loan; in fact, if the stock had remained at the same value or had declined in value, she would have realized no gain from the arrangement. She sought merely to be reimbursed for her selling and purchasing expenses and to be restored to her place in the market. Although the agreement did provide that she would be repaid at least $45,000 if the stock declined in value, that provision was not significant in the negotiations between the parties, since they did not expect the stock to fall in value; in fact, it did not. The impediment to Mrs. Prizant making the loan was that she lacked sufficient funds to do so without selling her Livingston Oil stock, and she was most reluctant to sell it at that time. Unless the corporation could overcome that impediment, it could not secure the funds that it needed to borrow. The agreement was not a promise to pay her stated interest for the period of the loan, nor other income that varied with *149 the time, amount, or risk of the loan; instead, the amounts she was to receive pursuant thereto varied with the value of the Livingston Oil stock. Moreover, in asking her to sell her stock, the corporation was asking her to act substantially against her best interests with respect thereto, and it appears that once she had sold it, Mrs. Prizant would have an enforceable right to recover under the agreement assuming that she offered to make the loan. Restatement, Contracts, sec. 90-91; Williston, Contracts, sec. 99 et seq., sec. 665 et seq. The terms of the agreement are ambiguous as to the reasons for which it was made. At one point, it states that it is made in consideration of the loan; but later, it states that the agreement is made as it is understood that she had to sell certain stock to make the loan. Thus, two reasons are stated as the bases for making the agreement. In view of this ambiguity in the terms of the agreement and the other circumstances surrounding its making, we are convinced that it should be treated as additional consideration for the sale of the stock. When the fair market value of property received in a sale cannot be ascertained, the proceeds of a sale which *150 are attributable thereto are taxable in the year in which they are received. Burnet v. Logan, 283 U.S. 404 (1931); M. P. Frank, 54 T.C. 75 (1970). Whether such fair market value can be ascertained 821 with fair certainty is a question of fact. Marsack's Estate v. Commissioner, 288 F. 2d 533 (C.A. 7, 1961), affg. a Memorandum Opinion of this Court. The payments to be made pursuant to the agreement in this case were wholly contingent upon the market value of the Livingston Oil stock. Thus, it does not appear that the value of the agreement could be determined with fair certainty. Marsack's Estate v. Commissioner, supra; Estate of William F. Stahl, 52 T.C. 591 (1969). The character of any proceeds attributable to the agreement was not altered because such proceeds were received from an interested third party rather than the vendee ( David A. DeLong, 43 B.T.A. 1185 (1941)), or because they were received in a year other than the year of the sale. Arrowsmith v. Commissioner, 344 U.S. 6 (1952). In DeLong, the taxpayer was a minority shareholder in a corporation, and in order to induce him to sell his stock as a part of a corporate reorganization, the principal shareholder paid him cash *151 in addition to the stock which he received under the plan of reorganization. We held the cash payment to be part of the consideration received in the exchange for the stock, and we said at 1187-88: There is no requirement of which we have been made aware that the sales price of an article can not be paid in whole or in part by one other than the vendee. * * * The respondent attempts to distinguish DeLong on the basis that it involved a single transaction, whereas the case before us involves two transactions, a sale and a loan. However, since we have found that the agreement by the corporation was consideration for the sale, we think that DeLong is not distinguishable. The fact that the corporation treated the payment on its books as a payment of interest may be relevant to our question, but it is not decisive. Elliott Paint and Varnish Co., 44 B.T.A. 241 (1941). Even though the corporation may have considered the payment to be for the use of money and therefore interest, the circumstances which led Mrs. Prizant to make the loan and the terms of the loan are sufficient to indicate that it was not interest to her. Whether the corporation was justified in deducting the payments as interest *152 is a question not before us, and the fact that the corporation claimed such a deduction does not require us to hold that the payment was interest in the hands of Mrs. Prizant. Elliott Paint and Varnish Co., supra; see Seligmann v. Commissioner, 207 F. 2d 489 (C.A. 7, 1953), revg. a Memorandum Opinion of this Court. Accordingly, we conclude that the agreement was received as consideration for the sale of Mrs. Prizant's Livingston Oil stock in 1963. We also conclude that the value of such agreement could not be ascertained with fair certainty at the time of the 1963 sale, and that any proceeds of such sale received pursuant thereto are taxable in 1964 as proceeds from the sale of a capital asset. Secs. 61(a), 451(a); sec. 1.451-1(a), Income Tax Regs.; Burnet v. Logan, supraLavery v. Commissioner, 158 F. 2d 859 (C.A. 7, 1946), affg. 5 T.C. 1283 (1945). We must now decide whether Jerome was entitled to ordinary loss treatment of a loss sustained with respect to the stock issued to the partnership in 1963 and transferred to him in 1964. Section 1244(a) provides in part that "[in] the case of an individual, a loss on section 1244 stock issued to such individual or to a partnership" shall *153 be treated as an ordinary loss. Section 1.1244(a)-1(b), Income Tax Regs., states, in part: (b) Taxpayers entitled to ordinary loss. The allowance of an ordinary loss deduction for a loss on section 1244 stock is permitted only to the following two classes of taxpayers: (1) An individual sustaining the loss to whom such stock was issued by a small business corporation, or (2) An individual who is a partner in a partnership at the time the partnership acquired such stock in an issuance from a small business corporation and whose distributive share of partnership items reflects the loss sustained by the partnership. In order to claim a deduction under section 1244 the individual, or the partnership, sustaining the loss, must have continuously held the stock from the date of issuance. * * * An individual who acquires stock from a shareholder by purchase, gift, devise, or in any other manner is not entitled to an ordinary loss under section 1244 with respect to such stock. Thus, ordinary loss treatment is not available to a partner to whom the stock is distributed by the partnership. * * * The regulations appear to be based upon the following statements in the conference committee report *154 dealing with section 1244: 822 It is understood that in the case of partnerships any losses from small-business stock will be passed through to the partners * * *. Also, since to qualify for the ordinary loss treatment the qualifying stock must be held by the individual or partnership to whom issued, loss on stock issued to a partnership which was distributed to a partner before the loss was sustained would not qualify. It is agreed that the stock issued to the partnership in 1963 qualified as section 1244 stock. However, the respondent contends that Jerome is not entitled to treat the loss with respect to the stock as an ordinary loss, because the stock was issued to the partnership but transferred to him before the loss was sustained. Jerome does not challenge the validity of the regulations but contends that in substance there was no partnership in 1963 and that the stock was issued to him, his father, and his brother, as co-owners. Thus, the outcome depends upon whether the partnership was still in existence at the time of the issuance of the stock in 1963. State law is applied to ascertaining the legal relationships between persons. Sec. 301.7701-1(c), Proced. & Admin. Regs.; Baker Commodities, Inc. v. Commissioner, 415 F. 2d 519 *155 (C.A. 9, 1969), affg. 48 T.C. 374 (1967). However, the existence of a partnership for Federal income tax purposes is a question to be decided under Federal law. Commissioner v. Tower, 327 U.S. 280 (1946). For the purposes of subchapter K (the provisions relating to the tax treatment of partners and partnerships), section 708(b) provides specific tests for determining whether a partnership has terminated. Such section provides, in part: (b) Termination - (1) General rule.* * * a partnership shall be considered as terminated only if - (A) no part of any business, financial operation, or venture of the partnership continues to be carried on by any of its partners in a partnership, or (B) within a 12-month period there is a sale or exchange of 50 percent or more of the total interest in partnership capital and profits. The tests set forth in section 708 have also been applied to determine whether a partnership has terminated under provisions outside subchapter K. For example, such section has been held to govern the question of whether a partnership exists for the purpose of applying the attribution rules of section 318. Baker Commodities, Inc. v. Commissioner, supra. We have held in *156 cases arising under section 708 that the transfer by a partnership of all of its assets and its business activity to a corporation does not of itself terminate the existence of the partnership for Federal income tax purposes. David A. Foxman, 41 T.C. 535 (1964), affd. 352 F. 2d 466 (C.A. 3, 1965). Also, a partnership is not necessarily terminated within the meaning of such section although the primary purpose for which it was formed ceases to exist. Baker Commodities, Inc. v. Commissioner, supra.Thus, the transfer of its business and substantially all of its assets in 1958 did not terminate the partnerhip. Moreover, after that transfer, the partnership continued to hold some assets and make loans. These were not acts of individuals but of the partnership. At the time the stock was issued in 1963, the partnership still held notes and common stock of the corporation, and there is no evidence that such notes and such stock did not have income-producing potential. In addition, the evidence indicates that the partners retained their capital accounts in the partnership until dissolution in 1964. The partnership continued to file Federal partnership returns of income. Under the circumstances, *157 it seems clear that for Federal tax purposes, the partnership had not been terminated at the time of the issuance of the stock in 1963 and that the stock was issued to the partnership, not to the individuals. Furthermore, under Illinois law, a partnership does not cease to exist unless it is terminated. Englestein v. Mackie, 35 Ill.App. 2d 276, 182 N.E. 2d 351 (1st Dist. 1962). Section 30 of the Illinois Uniform Partnership Act (Ill. Ann. Stat. ch. 106 1/2 (Smith-Hurd)) provides: Effect of dissolution - Continuance to to wind up On dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed. In Englestein, the court said at 357-358: The terms "dissolution" and "termination," as employed in the Partnership Act are not synonyms and, as used, have different meanings. Dissolution does not 823 terminate the partnership and does not end completely the authority of the partners. The order of events is: (1) dissolution; (2) winding up; and (3) termination. Termination extinguishes their authority. It is the ultimate result of the winding up and occurs at the conclusion of the wind up. * * * In Englestein, a partnership which had been *158 dormant for 28 years was held not to have terminated although there had been a decree of dissolution in 1931, some 28 years before an action for general accounting was brought. In the present case, there is no evidence of a dissolution or a winding up prior to the termination of the partnership in 1964, and hence, there has been no showing that the partnership was terminated under Illinois law prior to 1964. The petitioners argue that the incidents of taxation depend upon who are the real owners of the stock and not where mere naked title lies, and to support such proposition, they rely upon Rupe Investment Corporation, 30 T.C. 240 (1958), affd. 266 F. 2d 624 (C.A. 5, 1959), and Reuben Stiefel, 9 T.C. 576 (1947). In both those cases, we disregarded the record ownership of stock, because the evidence convinced us that the records did not reflect the real intention of the parties. However, in the present case, there is no evidence that the partners intended to hold the stock of the corporation as other than partners in a partnership. Compare Shea Co., 53 T.C. 135 (1969). The petitioners also rely upon Ray Guzowski 26 T.C.M. 666, 36 P.-H. Memo T.C. par. 67,145 (1967), in which we held *159 that a partnership had terminated for purposes of determining who owned the stock of a small business corporation under section 1371. However, in that case, the partnership agreement expressly provided for the termination of the partnership upon the expiration of the specified period, and in accordance with that provision of the partnership agreement, the partnership had terminated prior to the time with which we were concerned. Accordingly, our holding in that case does not support the petitioners' position in this case. In conclusion, we hold that Mrs. Prizant realized a gain in 1964, and that such gain is taxable to her in that year as gain from the sale of a capital asset. We also hold that Jerome has failed to prove that he was entitled to an ordinary loss deduction with respect to stock distributed to him by the partnership which became worthless in 1965. Accordingly, Decision will be entered under Rule 50. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954.↩