910

EDWIN M. KLEIN (THE FOREMAN TRUST & SAVINGS BANK, CONSERVATOR), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

IRVING N. KLEIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 49498, 49499. Promulgated December 18, 1934.

*L. A. Luce, Esq.*, for the petitioners.
*Isadore Graff, Esq.*, for the respondent.

916

OPINION.

McMahon: The first contention of the petitioners is that the amounts of $15,000 and $7,500 paid in the years 1924 and 1925, respectively, by them to their sisters pursuant to the provisions of the agreement of April 19, 1913, set forth in our findings of fact, should be excluded from their net taxable income for those years. Each petitioner paid one half of such amount in each year. The petitioners contend that these payments constituted distributions of the estate of their father and that under the contract of April 19, 1913, they became, in equity, the trustees for their sisters in connection with the distribution of these payments. They rely upon *Florence L. Klein*, 6 B. T. A. 617, as authority for this contention. In the first place we do not know that the respondent included these amounts in the income of the petitioners. All we know is that he refused to allow the deduction of those amounts. We are not advised as to the source of the moneys used by the petitioners to make these payments. Presumably the money was taken from the general funds of the petitioners. *Florence L. Klein, supra*, was a proceeding brought by the sisters of the petitioners for the purpose of determining the taxability to them of payments made to them in the years 1916 to 1922 under the agreement of April 19, 1913. We there held that this agreement created annuities payable to the sisters by the petitioners during the life of Rosalinda Klein, the mother

of the petitioners, the probable term being approximately 15 years; that the sisters purchased the annuities from their brothers, the petitioners herein, by transferring to the brothers property which they, the sisters, had received by distribution of their father's estate; that the value of each annuity at the time of acquisition was $57,753.50, which became the capital base for measuring any subsequent gain or loss in respect thereof; and finally that each yearly payment of $5,000 to each sister represented in part a return of the cost of the annuity and in part a gain, the latter being represented by the so-called discount.

It appears that *Florence L. Klein, supra*, does not support the position of the petitioners, but, on the contrary, establishes that the payments by the petitioners to their sisters represented cost of certain assets purchased from the sisters, rather than distributions of the estate of the father. We adhere to our holding in this regard in *Florence L. Klein, supra*. So far as we can determine from the evidence, there was no obligation upon the petitioners under the terms of their father's will to make such payments to their sisters. The will was never contested so far as we know and the petitioners received all the property which the will of their father gave them. We see no reason for holding that these payments by the petitioners constituted distributions of the father's estate through them to the sisters. See *Cora K. Louis*, 29 B. T. A. 1200.

*Marshall Field*, 15 B. T. A. 718; affirmed in *Commissioner* v. *Field*, 42 Fed. (2d) 820, cited by the petitioners, is distinguishable because there the taxpayer transferred all his right to a certain portion of the income of trust property. We there stated that the taxpayer " completely divested himself of any interest in the right to receive such income."

*Shellabarger* v. *Commissioner*, 38 Fed. (2d) 566, cited by petitioners, is also distinguishable. There also the taxpayer had transferred, for a valuable and legal consideration, her right to receive income from a trust.

In the instant proceeding, the amounts in question which were paid over by the petitioners to their sisters were, so far as we can determine, funds belonging to the petitioners. There was no such transfer of a specific right to income as was true in the above cited cases. See *Julian L. Hamerslag*, 15 B. T. A. 96. None of the other cases cited by the petitioners is in point and no useful purpose would be served by discussing them.

While the petitioners do not press the question on brief, the pleadings do raise the question of whether these payments are deductible in their entirety from gross income of the petitioners. However, as pointed out above, these payments were made in order to acquire

assets. They were capital expenditures which are not deductible from the gross income of the petitioners for the years in which paid.

While the petitioners do not discuss the question in their briefs, the pleadings and proof do present the question as to whether the respondent should have allowed as a deduction certain portions of the payments made as representing interest paid by the petitioners. Section 214 (a) (2)[1] of the Revenue Acts of 1924 and 1926, which are identical, allow the deduction of all interest paid or accrued within the taxable year on indebtedness. To be entitled to such a deduction a taxpayer must bring himself within the provisions of the statute.

In *Gilman* v. *Commissioner*, 53 Fed. (2d) 47, affirming *W. S. Gilman*, 18 B. T. A. 1277, the United States Circuit Court of Appeals for the Eighth Circuit had before it the question of whether certain amounts paid out upon so-called " notes " constituted deductible interest. The notes were specifically made payable only to the payee, were nonassignable, nontransferable, and nonnegotiable and it was specifically provided that in the case of death of the payee the notes were to be void. The notes were payable on or before 30 years after date. " Interest " at the rate of 5 percent per annum was provided for and paid. The court, in holding that the payments made by the maker of the so-called notes were not deductible as interest under section 214 (a) (2) of the Revenue Act of 1921, which is identical with the provisions of the statute in question in the instant proceeding, stated:

█ A debt is "that which is due from one person to another, whether money, goods or services; that which one person is bound to pay to another, or perform for his benefit." Webster's New International Dictionary. " In order to create an indebtedness there must be an actual liability at the time either to pay then, or at some future time." Bouv. Law Dict., Vol. 2, page 1531. "Every debt must be solvendum in praesenti, or solvendum in futuro— must be certain and in all events payable; *whenever it is uncertain whether anything will ever be demandable by virtue of the contract, it cannot be called a ' debt'. While the sum of money may be payable upon a contingency, yet in such case it becomes a debt only when the contingency has happened*, the term ' debt' being opposed to ' liability' when used in the sense of an inchoate or contingent debt." 17 Corpus Juris 1377. *Emil Weitzner* v. *Commissioner*, 12 B. T. A. 724; *Saleno* v. *City of Neosho*, 127 Mo. 627, 30 S. W. 190, 27 L. R. A. 769, 48 Am. St. Rep. 653; *Lowery* v. *Fuller*, 221 No. App. 495, 281 S. W. 968; *Clinton Mining & Mineral Co.* v. *Beacon* (D. C.), 264 F. 228; *Bolden* v. *Jensen* (D. C.), 69 F. 745. *The term " indebtedness " as used in the Revenue Act implies an unconditional obligation to pay.* Any definition more flexible would

---

[1] Sec. 214. (a) That in computing net income there shall be allowed as deductions:

  *   *   *   *   *   *   *

 (2) All interest paid or accrued within the taxable year on indebtedness, except on indebtedness incurred or continued to purchase or carry obligations or securities (other than obligations of the United States issued after September 24, 1917, and originally subscribed for by the taxpayer) the interest upon which is wholly exempt from taxation under this title.

only encourage subterfuge and deception. The "notes" involved in this case did not constitute a debt of the maker because their payment was contingent upon the payees being alive at the maturity of the instruments in 1950. [Emphasis supplied.]

Likewise in the instant proceeding the liability of the petitioners to make payments in the future was contingent. The payments were to be made only so long as the mother was alive. Therefore this liability of the petitioners was not "indebtedness" within the meaning of the statute, and no part of the payments is deductible as interest under the statute. Furthermore, it is significant that there is no reference whatever to interest in the contract of April 19, 1913. So far as we can determine from the evidence the full amount of each payment constituted a part of the purchase price of the assets received by the petitioners from their sisters. *Mills* v. *Commissioner*, 52 Fed. (2d) 931, affirming *Henrietta Mills, Inc.*, 20 B. T. A. 651; *Daniel Bros. Co.* v. *Commissioner*, 28 Fed. (2d) 761, affirming *Daniel Bros. Co.*, 7 B. T. A. 1086.

This is not inconsistent with our holding in *Florence L. Klein*, *supra*, that a portion of each payment to the sisters, represented by the so-called discount, is taxable income when received. The fact that it is taxable to the recipient does not necessarily determine that it is deductible interest paid by the petitioners herein. Discount is defined in Black's Law Dictionary, 3d ed., as follows:

DISCOUNT. In a general sense, an allowance or deduction made from a gross sum on any account whatever. In a more limited and technical sense, the taking of interest in advance. * * *

The term "discount" is not used in the instant proceeding in the latter sense.

The second question presented is whether the petitioner, Irving N. Klein, is entitled to take as deductions in the years 1926 and 1927, the respective amounts of $15,881 and $13,718, representing premiums paid by him in those years upon life insurance policies upon his own life. These policies were in the aggregate amount of $500,000 and were taken out for the purpose of securing a loan in excess of $800,000, in order to acquire a controlling interest in a corporation. The beneficiary under each of the policies was a bank acting as trustee which was to hold the policies or the proceeds thereof to secure the loan from another bank. The petitioner did not reserve the right to change the beneficiary. There are set forth in the margin applicable provisions of the Revenue Act of 1926.[2]

---

[2] SEC. 215. (a) In computing net income no deduction shall in any case be allowed in respect of—

\* \* \* \* \* \* \*

(4) Premiums paid on any life insurance policy covering the life of any officer or employee, or of any person financially interested in any trade or business carried on by the taxpayer, when the taxpayer is directly or indirectly a beneficiary under such policy.

In *Rieck* v. *Heiner*, 25 Fed. (2d) 453; certiorari denied, 277 U. S. 608, the Circuit Court of Appeals for the Third Circuit had under consideration similar provisions of the Revenue Acts of 1918 and 1921. There the taxpayer had placed as collateral to secure a loan, an insurance policy upon his own life, the beneficiary of which was his estate. It was there held that the premiums paid by the taxpayer upon such life insurance policy were not deductible. The court stated in part:

* * * Though assigned to and held by the creditor and for two years used as collateral security, it was, none the less, a policy in which the taxpayer was "directly or indirectly" a beneficiary, for if it had matured when held as collateral, and payment had been made to the creditor, it would indirectly have augmented his estate by decreasing his liabilities. * * *

To the same effect are *J. H. Parker*, 13 B. T. A. 115; and *Benjamin Barron*, 14 B. T. A. 1022.

Upon the authority of the above cases we hold that the petitioner in the instant proceeding was "directly or indirectly" a beneficiary under the policies in question and that the premiums in question are not deductible. The petitioner urges that the instant proceeding is distinguishable for the reason that the beneficiary, which the petitioner did not reserve the right to change, was the trustee. This, however, is immaterial. As pointed out in *Rieck* v. *Heiner*, *supra*, if payment were made to the creditor upon these life insurance policies it would indirectly augment the petitioner's estate by decreasing the liabilities. In both *J. H. Parker*, *supra*, and *Benjamin Barron*, *supra*, the beneficiaries under the policies were creditors of the taxpayers.

The last question presented is whether the petitioner, Irving N. Klein, is entitled to deduct from his gross income for the year 1926 an amount of $1,175.43 alleged to represent one fifth of the depreciation sustained upon assets of the Rosalinda Klein trust. The respondent, in the notice of deficiency, increased the income reported by the petitioner from such trust and stated that in determining the income distributable by the trust the depreciation on the assets to the date of distribution to the heirs was disallowed. In the 30-day letter it was stated by the respondent that the depreciation sustained upon the trust assets was $5,877.15, but that since there was no specific provision in the will or a decree of court construing the will or the state law authorizing the taking of depreciation, such depreciation should be disallowed in computing the net income of the trust. At the hearing counsel for the petitioner took the position that there was only a question of law involved, and that if it were determined that depreciation should be allowed, then the amount thereof could be settled under Rule 50. Counsel for the respondent at that time refused to agree that there was only a question of law. Despite

this, the petitioner did not introduce evidence as to the amount of depreciation sustained upon the trust assets. In fact, there is no evidence to show the nature of the trust assets, the probable useful life thereof, or the basis for depreciation of such assets. In this situation we are not in a position to determine the amount of depreciation sustained. The fact that the respondent, in the 30-day letter, did not raise the question of the amount of depreciation is not determinative. The respondent's disallowance of the claimed deduction is presumptively correct and the petitioner has the burden of proving it wrong. *Welch* v. *Helvering*, 290 U. S. 111. The hearing before the Board is a complete hearing *de novo*. *Phillips* v. *Commissioner*, 283 U. S. 589, 598. The burden is upon the taxpayer to show all elements necessary to a proper determination of the amount of depreciation sustained. This the petitioner has not done. Furthermore, the petitioner has failed to show that the property in question meets the requirements of the statute. Section 219 of the Revenue Act of 1926 provides that trusts are entitled, generally, to the same deductions to which individuals are entitled. Section 214 of the Revenue Act of 1926 relates to deductions allowed to individuals, and the subdivision applicable here is (a) (8).[3] In the instant proceeding, we do not know the nature of the trust property, nor do we know whether it was used in a trade or business, as required by the statute. See *Gertrude D. Walker*, 20 B. T. A. 937, 947, affirmed on another issue in *Walker* v. *Commissioner*, 63 Fed. (2d) 351; certiorari denied, 289 U. S. 746. Thus, in this regard, the petitioner has also failed to show that either he or the trust is entitled to a deduction for depreciation.

In view of the above it becomes unnecessary to determine, as a matter of law, whether the petitioner, as beneficiary, would otherwise be entitled to the benefit of a deduction for depreciation of the trust assets.

*Decision will be entered for the respondent.*

---

[3] Sec. 214. (a) In computing net income there shall be allowed as deductions:

\*     \*     \*     \*     \*     \*     \*

(8) A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence. In the case of improved real estate held by one person for life with remainder to another person, the deduction provided for in this paragraph shall be equitably apportioned between the life tenant and the remainderman under rules and regulations prescribed by the Commissioner with the approval of the Secretary.