*Decision will be entered under Rule 50.*

ELLIOTT PAINT & VARNISH COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 103032.   Promulgated April 23, 1941.

*Donald E. Currier, C. P. A.,* and *Roger M. Currier, Esq.,* for the petitioner.

*David Altman, Esq.,* for the respondent.

OPINION.

MURDOCK: The petitioner contends that a portion of the total amount paid to Mary B. Elliott during each of the taxable years was interest and not purchase price. This is directly contrary to the provisions of the written contract entered into by the parties, which shows that the payments of $3,000 made in each of the taxable years were entirely a part of the purchase price and were not interest. The petitioner contends that the true agreement of the parties, as shown by parol evidence, was an agreement to pay a purchase price of $27,500 and interest thereon in the amount of $12,500. The question must turn, of course, upon what was the actual agreement of the parties. Was it an agreement to pay so much as purchase price and the balance as interest? This must be determined from all of the evidence, documentary and otherwise. Although no evidence was excluded on the ground that it was parol evidence tending to vary the terms of the written instrument, nevertheless, the evidence as a whole does not establish that the actual agreement of the parties was different from that which is expressed in their written contract.

While the figure $27,500 appears a number of times, the record does not justify a finding that the value of the property at the time of the

transaction was $27,500. No opinion evidence of the value of the property was offered. An appraisal was mentioned in a letter from the buyer to the seller, but the appraiser was not called as a witness, his qualifications were not shown, and no basis for his valuation appears. The seller rejected an offer of $27,500 in cash for the property. The parties, in agreeing upon the purchase price of $40,000, as set forth in their written contract, used some kind of a rough calculation in which interest on $27,500, at some rate not shown in the record and for a period of years not shown in the record, was computed and added to $27,500 to arrive at a figure which was approximately, but not exactly, $40,000. The only actual figures contained in the record pertaining to any such computation are on a piece of paper which the seller had in her hands and which had been furnished her by an adviser who was with her at the time the sale was made. On that paper, interest at 5 percent on $27,500 for 10 years, amounting to $13,750, was added to $27,500 to make $41,250. This total was then divided by 15 to show that 15 annual payments of $2,750 would equal $41,250. The record gives no clue whatsoever as to why the 5 percent rate and the 10-year and 15-year periods were used. Counsel for the petitioner in their briefs twice asked for a finding that the life expectancy of the seller was 15 years at the time of the sale. Although Mary B. Elliott stated that she was 71 years of age at the date of the hearing, there is no evidence in the record to show her life expectancy in December 1936, or to show that the parties had that factor in mind at the time of the deal. The parties did not incorporate any of the computations in their agreement, but, instead, adopted the written agreement of December 1, 1936. The mathematics by which parties arrive at an agreed purchase price does not represent their agreement. *Hundahl* v. *Commissioner*, 118 Fed. (2d) 349. Cf. *Baltimore & Ohio Railroad Co.*, 29 B. T. A. 368; affd., 78 Fed. (2d) 460.

The petitioner sets out in its brief an elaborate table dividing the total payments of $40,000 over the 15-year period into semiannual payments, dividing the semiannual payments into payments of principal and payments of interest at 5½ percent on a declining balance of principal which begins with $27,500 and is reduced semiannually by the excess of the total semiannual payments over the portion thereof which is shown as interest. If the parties had actually adopted such a table as a part of their agreement, it might be pretty strong evidence in support of the petitioner's contention. But the first time that any such computation was suggested as having any possible application to the contract of December 1, 1936, was when the auditor made the entry in closing the books of the petitioner

for the year ended November 30, 1937. That entry was made more than a year after the contract was entered into. It is no more than a remarkable coincidence that the actual payments almost fit into this table. They do not actually fit into the table because the last two semiannual payments are arbitrarily adjusted by the computator in order to force the figures to come out properly. The record does not show that the parties at the time they entered into the contract gave any consideration to an interest rate of 5½ percent, to the computation of interest semiannually, or to the computation of interest upon declining balances of principal. So far as the record shows, they had no idea that any such table could be devised. The parties adopted the interest figures shown in the table in reporting their income taxes. It does not appear how important this was to the seller but it does appear that she relied entirely in this connection upon the advice of the president of the petitioner, who was her friend.

The action of the parties at the time they entered into the contract, including their consideration of the figure $27,500, and their subsequent actions in reporting a part of the payments as interest, are not without probative value. But that evidence is not entirely convincing even by itself, since it does not go far enough to show that they had agreed upon the purchase price of $27,500 with interest thereon at some particular rate of interest for a definite number of years. Cf. *Marshall C. Allaben*, 35 B. T. A. 327, and *Marsh & Marsh, Inc.*, 5 B. T. A. 902. Opposed to that evidence is the written contract, which is, and was intended to be, evidence of the agreement of the parties, entered into by them deliberately after full consideration and drawn at their request and for their benefit by an attorney. The parties have never made any effort to amend or modify that written agreement to provide for the payment of interest. The written contract is clear and the record as a whole does not show that the parties, when they made their bargain, really intended to pay any portion of the $40,000 as interest. This distinguishes the case of *Hudson-Duncan & Co.*, 36 B. T. A. 554. The sale of property for cash is quite different from a sale upon a deferred payment plan. The fact that the deferred payment sale price is greater than the cash sale price does not make interest of the difference. *Anderson & Co.*, 6 B. T. A. 713, 717. One justification for the increase in price is to make allowance for the additional risk which the seller must assume. Cf. *Marsh & Marsh, Inc., supra*. The Commissioner did not err in concluding that no part of the periodic payments represented the payment of interest.

The alternative contention of the petitioner is also without factual support. The petitioner claims that it gave its note for $40,000 in exchange for property worth only $27,500 and the difference represents discount on the note which ought to be deducted ratably over the life of the note. It is not established as a fact in this record that the property was worth only $27,500 at the date of the sale. This point has been sufficiently discussed already. Furthermore, the transaction was one of purchase of a piece of property. The note was given merely as a part of the security for the unpaid purchase price. The transaction did not represent and was not intended to represent the discount of a note. It is unnecessary to consider this contention further.

The Commissioner, in computing depreciation, has used a portion of the $40,000 cost of the properties as basis. This has resulted in a larger basis than was claimed by the petitioner or than would be allowable otherwise. The Commissioner, however, used a greater estimated remaining life for each building. The final result of his computation was a smaller deduction than the amount claimed by the petitioner. The petitioner had the burden of showing that the probable useful life of each building, as that life might reasonably have been estimated during the taxable years, was less than the period used by the Commissioner. The petitioner has not sustained this burden. Indeed, arguments of its counsel in their briefs indicate a failure to realize that they have this burden. The president of the petitioner testified that, in computing the deductions claimed on the return, an estimate made by Beardsley was used. Beardsley was not called as a witness, his estimates are not a part of the record, the basis of his estimates is not shown, and it is not shown that he was qualified to make estimates of any kind. The petitioner's counsel apparently relies upon the fact that at the time of the hearing the petitioner was vacating one of the buildings and had decided to demolish the other two. But the evidence does not show that any of these events was anticipated during the taxable years. Deductions for depreciation for 1937 and 1938 must be based upon facts known or anticipated during those years and not upon the hindsight of subsequent years. The record does not enable the Board to make an independent estimate of the probable useful life of any one of the three buildings or the connecting link as of either of the taxable years. Therefore, the determination of the Commissioner on this point can not be disturbed.

*Decision will be entered for the respondent.*