Charles L. Johnson v. Commissioner.
Johnson v. Commissioner
Docket No. 1410.
United States Tax Court
1943 Tax Ct. Memo LEXIS 56; 2 T.C.M. (CCH) 983; T.C.M. (RIA) 43484; November 12, 1943
*56 A. P. Lowell, Esq., 1 Federal St., Boston, Mass., for the petitioner. W. R. Murrin, Esq., for the respondent. ARUNDELL
Memorandum Opinion ARUNDELL, Judge: The Commissioner determined a deficiency in income tax for the year 1939 in the amount of $1,049.68. The only adjustment that remains in issue is the disallowance of an alleged interest deduction in the sum of $5,760.42, which represents a part of certain payments made by petitioner to the estate of W. H. Graham. Respondent determined that the total payments made to said estate by petitioner constituted a capital investment, no part of which was allowable as a deduction for interest paid. The facts are stipulated. [The Facts] Petitioner is an individual residing in Providence, Rhode Island. On January 31, 1930 he entered into an agreement with William H. Graham with respect to the purchase by petitioner of the controlling capital stock interest in W. H. Graham Corporation, a Massachusetts corporation carrying on an undertaking business. By the terms of the agreement petitioner paid Graham the sum of $100,000, receipt of which was acknowledged therein, and agreed further to pay Graham the sum of $900 each month during the *57 lifetime of Graham and to pay the same amount to his estate or to a person or persons designated in Graham's will for a period of five years after his death. The agreement provided that $900the payments during Graham's lifetime were to be reduced by the amounts, if any, received by Graham as salary from the W. H. Graham Corporation. The agreement further provided that petitioner at any time could satisfy all his obligations under said contract by the payment of $150,000 to Graham or his legal representatives or the person or persons designated in his will. The shares of stock that were the subject of the agreement were conveyed by Graham to petitioner and the latter, in accordance with the requirements of the contract, forthwith assigned such stock to a bank in escrow to secure the monthly payments hereinabove referred to. Provision was made for the delivery of the stock by the escrow agent to Graham, at the latter's option, upon default by petitioner in making any of said monthly payments for a period of thirty days, in which event all sums theretofore paid by petitioner were to remain the property of Graham. Graham covenanted to cooperate in furthering the interests of the corporation *58 while he was in New England, and he also agreed not to compete in any way with the business of petitioner or the corporation. He agreed at any time upon request to present his resignation as president and director of the corporation. Graham was born June 22, 1874. He ceased to be employed by the W. H. Graham Corporation on February 8, 1930. He died on March 28, 1938. During the calendar year 1939 petitioner paid to his estate eleven installments in the amount of $900 each under the above contract. In his return for 1939 and in his returns for prior years petitioner treated a portion of the payments made under said contract as interest, and a portion thereof as principal. The apportionment was based upon the following computation: on the date of the agreement, January 31, 1930, Graham's life expectancy, plus the five years thereafter during which the payments were to be made, amounted to approximately twenty-two years. The present value of an annuity of $10,800 per year at six per cent interest for twenty-two years is $130,049.08. In the year 1930 petitioner deducted as interest six per cent of that sum, treating the balance of his payments in that year as a reduction of principal. *59 Similarly in 1931 petitioner computed interest at six per cent upon the balance due at the beginning of that year and treated the difference between that figure and the total payments made in that year as principal repayments. This meant that each year the interest payments became smaller and the principal payments became larger. [Opinion] To support his contention that a portion of the amounts paid in the taxable year represented deductible interest petitioner relies almost exclusively upon the case of John C. Moore Corporation, 15 B.T.A. 1140, affirmed 42 Fed. (2d) 186. We think that case is distinguishable. The parties there agreed upon the present fair market value of the annuity, the value of the property received in exchange, and the life expectancy of the annuitant, although the taxpayer had been satisfied to write the annuity upon a basis that the annuitant, by reason of poor health, would not live as long as she would according to mortality tables. Having agreed upon these figures it was evident that payments over the period of the agreed life expectancy would exceed the compensation received for the annuity. *60 The case held, as did Florence L. Klein, 6 B.T.A. 617, that the excess was a deductible amount, and the deduction was allowed in those instances as interest (though computed differently in each case), rather than as loss or expense after full recovery of principal. Petitioner can not bring himself within the rule of those cases upon the present facts. He is seeking to deduct an amount as interest paid upon indebtedness. Since the contract itself said nothing whatever about interest the only plausible explanation of petitioner's claim is that he has promised to pay more over a period of years than he would have been required to pay immediately. We can gather nothing from the contract or facts before us to say that this is so. We do not know the value of what he received for his promise to make installment payments in the future. He received not only stock but Graham's promises to cooperate and not to compete. At one point in his brief counsel for petitioner appears to assume that the stock was worth $250,000, which is alleged to have been the selling price, for petitioner could have acquired full title to and possession of it by paying $150,000 in addition *61 to the down payment of $100,000. We do not think this establishes the fair market value. This was not a sale for an unpaid balance of $150,000 against which installment payments were to be credited. The full amount of $150,000 would have had to be paid to discharge the obligation regardless of the amounts previously paid as installments. Nor do we think it is permissible to compute the present value of the annuity by using mortality tables and an assumed rate of interest and then to conclude that the value so found must be presumed to be equivalent to the value of the property received in exchange. The Moore case itself is sufficient illustration of the plain fact that the contemplated life expectancy of a particular individual has no necessary relation to the life expectancy of an average person of his age according to experience tables. Petitioner's obligation in the instant case was not absolute. Edwin M. Klein, 31 B.T.A. 910, 919, affd. 84 Fed. (2d) 310. It was contingent not only upon the continued life of Graham but upon the possibility that salary payments by the corporation might reduce it in amount or discharge *62 it altogether. From the above considerations we think it is clear that petitioner can not prevail. Petitioner contracted for the purchase of a capital asset in consideration, among other things, of his promise to make installment payments. Nothing was said as to interest on the deferred payments. There is no basis in the present facts for inferring that interest was intended to be or was in fact paid. See Elliott Paint & Varnish Co., 44 B.T.A. 241, 247; Steinbach Kresge Co. v. Sturgess, 33 Fed. Supp. 897; Edward M. Klein, supra;I.T. 1242, C.B. I-1, p. 61. The parties have stipulated other issues, Accordingly, Decision will be entered under Rule 50.