**The KAHLER CORPORATION, Appellee,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellant.**

No. 72-1663.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 10, 1973.

Decided Oct. 5, 1973.

**2**

Richard W. Perkins, Atty., Tax Div., Dept. of Justice, Washington, D. C., for appellant.

Robert J. Johnson and John W. Windhorst, Jr., Minneapolis, Minn., for appellee.

Before VAN OOSTERHOUT, Senior Circuit Judge, and LAY and ROSS, Circuit Judges.

ROSS, Circuit Judge.

This is an appeal from a decision of the United States Tax Court, 58 T.C. 496, favorable to the taxpayer. The Tax Court rejected the Commissioner's allocation, under 26 U.S.C. § 482, of interest income to a parent corporation as a result of interest free loans made by the parent to its subsidiaries. We reverse with directions to enter judgment in favor of the Commissioner.

The Kahler Corporation (Kahler) has for many years owned and operated a hotel in Rochester, Minnestota. In the early 1960's Kahler established seven wholly owned subsidiaries to operate and manage new hotel or motel properties outside of Rochester. These subsidiary corporations were funded by Kahler. A small portion of the required capital was contributed by Kahler in exchange for all of the stock of the subsidiary. The balance of the required capital was loaned by Kahler on an interest free basis. These advances had no fixed maturity date but were reflected as debts on the books of both the parent and the subsidiaries and were repaid without interest from time to time thereafter.

During the taxable years here involved, 1965 and 1966, four of these subsidiaries were indebted to Kahler in the following amounts:

|  | Dec. 31, 1964 | Dec. 31, 1965 | Dec. 31, 1966 |
|---|---|---|---|
| K.F.M. | $ 325,000 | $ 315,000 | $ 293,000 |
| Mankato | 865,000 | 785,000 | 1,195,000 |
| Oak Manor | none | 335,000 | 215,000 |
| Owatonna | 485,000 | 425,000 | 385,000 |
| Total | $1,675,000 | $1,860,000 | $2,088,000 |

During each of these taxable years, loan repayments were made by the subsidiaries to Kahler although K.F.M and Mankato increased the debt they owed to Kahler. No interest was paid by the subsidiaries on these loans. All of the interest paid by Kahler to banks [1] and to Northwestern Mutual Life Insurance Company [2] was deducted by Kahler as an ordinary expense of business on its federal income tax return. None of this interest expense was charged by Kahler to its subsidiaries and none of it was claimed by the subsidiaries as deductions on their separate federal income tax returns.[3] During oral argument counsel for Kahler conceded that during 1965 and 1966, Kahler owed and paid interest on total indebtedness exceeding the total then owed to Kahler by these four subsidiaries.

---

1. During 1965 and 1966, Kahler was indebted in substantial sums to Minneapolis and Rochester banks.

2. During the years in question, Owatonna and Mankato were indebted to Northwestern Mutual on a mortgage loan made in 1961, in the original principal amount of $4,500,000. Even though Owatonna and Mankato gave the note and mortgage, the funds were disbursed to Kahler and all principal and interest payments were made by Kahler.

3. The group did not file a consolidated tax return under 26 U.S.C. § 1501, but rather opted to file separate returns.

Since Kahler's income was substantial, Kahler had a tax benefit from the interest deduction of 48%. If Kahler had charged interest to its subsidiaries, its income would have increased and the tax on the increased income would have been 48%. If the subsidiaries had paid interest to Kahler, they would have been able to deduct it, but much of the benefit of those deductions would have been at the 22% rate. Obviously it was to Kahler's advantage, as sole owner of the subsidiaries, to claim all of the interest deduction and not charge any interest to its subsidiaries.

The Commissioner determined, pursuant to the authority of Section 482 of the 1954 Code (26 U.S.C. § 482),[4] and related regulations,[5] that interest income, at the rate of 5% per annum, should be allocated to Kahler and assessed a deficiency accordingly.

Correlative adjustments for each of the subsidiaries, increasing their interest expense deductions, were also proposed by the examiner. These allocations and adjustments were proposed upon the Commissioner's determination that such allocation was necessary to clearly reflect the income of both Kahler and its subsidiaries.

The Tax Court upheld the position of Kahler on the ground that the Commissioner failed to show that the interest free advances actually produced income to the subsidiaries and that allocation was improper in the absence of such proof. In so holding, the Tax Court relied upon a line of cases, including Huber Homes, Inc. v. Commissioner, 55 T.C. 598 (1971); PPG Industries, Inc. v. Commissioner, 55 T.C. 928 (1970); Smith-Bridgman & Co. v. Commissioner, 16 T.C. 287 (1951), acq. 1951–1 Cum. Bull. 3; Tennessee-Arkansas Gravel Co. v. Commissioner, 112 F.2d 508 (6th Cir. 1940), which hold that income cannot be created from a transaction where none was actually realized. The Commissioner appealed to this Court citing the recent case of B. Forman Company v. Commissioner, 453 F.2d 1144 (2nd Cir.), cert. denied, 407 U.S. 934, 92 S.Ct. 2458, 32 L.Ed.2d 817, rehearing denied, 409 U.S. 899, 93 S.Ct. 102, 34 L.Ed.2d 158 (1972). We agree with the position taken by the Commissioner and by the Second Circuit in *Forman.*

In *Forman* two corporations joined together to form a third corporation with each of the controlling corporations owning 50% of the stock of the new corporation. Each of the controlling corporations made $1,000,000 interest free loans to the newly created corporation. The Second Circuit held that the Commissioner's allocation of 5% interest, as income to the two controlling corporations, was proper under the regulation and that the regulation was consistent with the scope and purpose of Section 482.[6]

---

4. Section 482 provides:
"In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Secretary or his delegate may distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly reflect the income of any of such organizations, trades, or businesses."

5. The applicable regulations are Treas.Reg. § 1.482–2(a) (1968):

"§ 1.482–2 *Determination of taxable income in specific situations*
(a) *Loans or advances*—(1) *In general.* Where one member of a group of controlled entities make a loan or advance directly or indirectly to, or otherwise becomes a creditor of, another member of such group and charges no interest, or charges interest at a rate which is not equal to an arm's length rate as defined in subparagraph (2) of this paragraph, the district director may make appropriate allocations to reflect an arm's length interest rate for the use of such loan or advance."

6. *Forman* involved a problem not present in this case since the "subsidiary" was the off-

██ In this case there is no question that the Commissioner's allocation of interest income to Kahler, is consistent with treasury regulation 1.482–2. Therefore, the primary question with which we are presented is whether or not the regulation is unreasonable or clearly inconsistent with the statute. Treasury regulations constitute contemporaneous construction by those charged with administration of these statutes and should not be overruled except for weighty reasons. Commissioner v. South Texas Co., 333 U.S. 496, 68 S.Ct. 695, 92 L.Ed. 831 (1948); B. Forman Company v. Commissioner, *supra*, 453 F.2d at 1152. We find no such weighty reasons present here.

In determining that the regulation was reasonable and correctly applied to a similar situation, the Second Circuit stated:

"These regulations must prevail, for they are entirely consistent with the scope and purpose of § 482. The instant loans without interest are obviously not at arm's length, since no unrelated parties would loan such large sums without interest. The allocation of the interest income to taxpayers was necessary in order to properly reflect their taxable incomes." B. Forman Company v. Commissioner, *supra*, 453 F.2d at 1156.

The claim that the Commissioner may not create income where none actually existed and thus that the regulations were inapplicable was also analyzed correctly by the Second Circuit in *Forman*:

"Taxpayers have advanced an argument, supported by case law, that the Commissioner may not create income where none actually existed. In Tennessee-Arkansas Gravel Co. v. Commissioner of Internal Revenue, 112 F. 2d 508 (6th Cir. 1940), the court held that the Commissioner could not increase the income of a taxpayer whose property had been used by a related corporation without the payment of rent. The court concluded that, since

no rent was called for, none could be created. In Smith-Bridgman & Co. v. Commissioner, 16 T.C. 287 (1951), the Commissioner had added interest to the taxable income of Smith-Bridgman & Co., as allegedly constituting interest which should have been charged by it on noninterest bearing loans to its parent corporation, Continental Department Stores (Continental). Taxpayer did not report as income any interest on these loans. The Tax Court, in overruling the Commissioner, who had allocated interest to Smith-Bridgman, refused to authorize the creation of income where no income was realized. This decision was thought to rest on the fact that the Commissioner had added interest to taxpayer, but had failed to make an adjustment to the income of Continental. However, the rationale of *Smith-Bridgeman* (sic) was clarified in Huber Homes, Inc. v. Commissioner, 55 T.C. 598 (1971), where it was held that the failure to make the adjustment was only a possible supporting factor, not a controlling factor. *Smith* was reaffirmed in PPG, Industries, Inc. v. Commissioner, 55 T.C. 928 (1970), where the Tax Court held that § 482 did not authorize the Commissioner to impute interest on non-interest bearing loans where in fact no interest was created.

Several cases have held that one related party is not required to charge another related party interest on a loan; that the lender is not to be taxed on interest, with respect to a loan, where it was not intended that interest be collected. . . .

To the extent that the above cases cited by taxpayers may be read as holding that no interest can be allocated under § 482 under the facts of this case, they are not in accord with either economic reality, or with the declared purpose of section 482. They seriously impair the usefulness of §

---

spring of two "parent" corporations. Here all of the stock of the subsidiaries in question

was owned by Kahler so there is no question of "common control".

482. Those cases may be correct from a pure accounting standpoint. Nevertheless, interest income may be added to taxpayers' incomes, as long as a correlative adjustment is made to Midtown, for then the true taxable income of all involved will be properly reflected." B. Forman Company v. Commissioner, *supra*, 453 F.2d at 1155–1156.

The proper standard to be applied in cases such as this is whether or not the loans from the taxpayer to other members of a controlled group would have been made on an interest free basis in arm's length dealings between uncontrolled taxpayers. Whether the Commissioner shows that the borrowed funds actually produced income for the borrowing corporation is of no importance.[7] Money, and the use of money, is an essential element in the profit making activities of most corporations, just as raw material is a necessary component in the manufacture of salable goods.

In this case we have a situation in which the parent corporation has borrowed money at rates in excess of 5% and has deducted the interest paid on those loans in determining its taxable income. In turn it has loaned a portion of that money to wholly owned subsidiaries, without interest. In so doing the combined tax liability of the parent and its subsidiaries was substantially reduced. In order to correctly reflect the true income of each of the subsidiaries and the parent, the Commissioner allocated income to the parent in an amount equal to 5% per annum on the outstanding loan balances. It is difficult to imagine a situation in which Section 482 would be more applicable on either an equitable or a legal basis.[8]

Kahler claims in the alternative that the Commissioner abused his discretion in applying the regulations retroactively; that management fees paid by the subsidiaries to Kahler actually reflected compensation attributable to the interest free advances; and that the advances by Kahler to one of the subsidiaries (Mankato) actually constituted a capital investment to the extent of $500,000 since that amount was reclassified by Kahler and Mankato in 1968 from debt to equity.

We have examined each of these contentions and have found them to be without merit. 26 U.S.C. § 7805(b) empowers the Commissioner to prescribe the extent, if any, to which any regulation will be applied retroactively. The Commissioner has broad discretion to determine whether to apply these regulations retroactively. In our opinion that discretion was not abused in this case. *See generally* Automobile Club v. Commissioner, 353 U.S. 180, 77 S.Ct. 707, 1 L.Ed.2d 746 (1957).

The management fee paid by the subsidiaries to Kahler is shown from the record to be exactly that and not a substitute for interest. As to the 1968 capitalization of $500,000 of Mankato's debt to Kahler it need only be pointed out that during the taxable years in question, 1965 and 1966, the entire amount of the loan to Mankato was shown on the books of both corporations as debt-not as invested capital.

For the reasons hereinbefore set forth the judgment of the Tax Court is reversed and the case is remanded with directions to enter judgment for the Commissioner.

---

7. We find no support in the legislative history of Section 482 for the claim that transactions between controlled corporations must be traced to the production of gross income. The express purpose of that statute is the prevention of tax evasion (by the shifting of profits, the making of fictitious sales, and other methods frequently adopted for the purposes of milking). H.R.Rep.No.2, 70th Cong., 1st Sess.; S.Rep.No.960, 70th Cong., 1st Sess.

8. It would have been entirely proper in this case for the Commissioner to have allocated to the subsidiaries a portion of the interest deduction taken by Kahler for interest paid to the banks and to Northwestern Mutual. Since the actual interest paid by Kahler exceeded 5%, the deficiency assessed against it would have been greater if the Commissioner had chosen to allocate the interest deduction rather than allocate income.