GERALD F. PADUANO AND CAROLINE PADUANO, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Paduano v. Commissioner
Docket Nos. 7103-72, 7168-72, 7169-72.
United States Tax Court
T.C. Memo 1975-69; 1975 Tax Ct. Memo LEXIS 303; 34 T.C.M. (CCH) 368; T.C.M. (RIA) 750069; March 20, 1975, Filed Victor Chini, for the petitioners. John D. Steele, Jr., for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent has determined the following deficiencies in the Federal income tax of the petitioners: Petitioners
Year
Deficiency
Gerald F. and
1967
$11,061.91
Caroline Paduano
1968
8,881.62
1969
8,824.21
Rocco M. and
1967
$10,553.54
Dorothy Cappuccilli
1968
9,217.04
1969
7,921.75
Peter L. and
1967
$10,094.08
Grace A. Cappuccilli
1968
8,753.64
1969
8,121.65
We are to decide if respondent properly imputed interest income to petitioners pursuant to section 482, Internal Revenue Code of 1954, as amended. [2]
*304 FINDINGS OF FACT Gerald F. and Caroline Paduano, Rocco M. and Dorothy Cappuccilli, and Peter L. and Grace A. Cappuccilli, husbands and wives, filed joint Federal income tax returns for the years in issue with the district director of internal revenue, Buffalo, New York, and were residents of Syracuse, New York, when the petitions herein were filed. [3]
In 1954 petitioners formed a partnership styled "Cappuccilli, Cappuccilli and Paduano" (CCP), in which each had a one-third interest and which engaged principally in the business of renting and selling realty. Each of petitioners also held a one-third stock interest in: Stonehedge Development Corporation (Stonehedge), organized on April 8, 1953; Seneca Sewerage Corporation (Seneca), organized on April 1, 1961; and Cappy's Real Estate, Inc. (Cappy), organized on September 3, 1958. In the period February 22, 1961 - January 3, 1962, CCP acquired five contiguous farms, known collectively as Seneca Knolls, at a total cost of $320,083. [4] On January 10, 1962, CCP conveyed Seneca Knolls to Stonehedge in consideration *305 of: a cash payment in the amount of $3,430; the assumption of mortgage obligations totalling $275,170; and a note in the amount of $1,075,000, bearing no interest, secured by a purchase money mortgage, and providing for the payment of $75,000 on January 10, 1964, and of $100,000 on January 10 of each of the ten succeeding years. Henderson Farm, lying adjacent to Seneca Knolls, was purchased by CCP on March 8, 1960, for $125,460. The farm was sold to Stonehedge on February 20, 1961, in consideration of: a cash payment of $27,894.86; the assumption of mortgage obligations totalling $107,605.14; and a note in the amount of $81,000, bearing interest at an annual rate of six percent, secured by a purchase money mortgage, and providing for payment to be made in equal installments on the first and second anniversaries of the sale. CCP purchased Preston Farm from Stonehedge on April 15, 1961, for $22,500. Petitioners intended that a sewerage treatment plant be built at Preston Farm to service *306 Seneca Knolls and Henderson Farm. Pursuant to that design they caused CCP to sell one-half of the Preston Farm to Seneca on April 16, 1961, in consideration of: a cash payment of $5,000; the assumption of mortgage obligations of $10,000; and a note in the amount of $25,000, bearing interest at the rate of six percent per annum, secured by a purchase money mortgage, and providing for payment in full on April 15, 1966. [5]
Petitioners anticipated that Seneca Knolls and Henderson Farm would be subdivided into lots, the sales of which would provide Stonehedge with sufficient funds to discharge the obligations which it incurred in acquiring the realty; but owing to circumstances which need not be recounted here, the development of those properties could not proceed as planned. Consequently, Stonehedge was unable to reduce the principal amount of its indebtedness to CCP in compliance with the terms of its several obligations. These obligations were not wholly satisfied until March 14, 1972, pursuant to an action in foreclosure initiated *307 by CCP. [6]
Seneca did not discharge the obligation which it incurred in purchasing one-half of Preston Farm until 1973. CCP waived compliance with the interest obligations incurred by Stonehedge and Seneca in purchasing Henderson Farm and one-half of Preston Farm, although both of these corporations paid interest to others of their creditors while the mortgage obligations to CCP remained outstanding. Aside from the mortgage loans, CCP made advances to Stonehedge and Cappy to enable them to defray expenses necessary to their continuing in operation. Certain of these loans, in respect of which interest was neither charged nor paid, were outstanding during the years in issue. OPINION Where one member of a group of commonly controlled entities becomes indebted to another but is charged no interest, respondent may allocate interest to the creditor under section 482, [7] would interest have been charged under like circumstances in an arm's length transaction. B. Forman Company v. Commissioner,453 F.2d 1144 *308 (C.A. 2, 1972), affirming in part and reversing in part 54 T.C. 913 (1970), certiorari denied 407 U.S. 934 (1972). [8] Pursuant to his authority under section 482, respondent has imputed interest income to CCP at the rate of five percent per annum on the loans to Stonehedge, Seneca and Cappy outstanding during the years in issue. [9]
*309 Petitioners have acknowledged that no interest was charged on the nonmortgage loans but have failed to demonstrate that a party dealing with Stonehedge and Cappy at arm's length would have done the same. Accordingly, we hold that respondent properly imputed interest income to CCP in respect of the nonmortgage loans. Petitioners have also failed to demonstrate that a party dealing with Stonehedge at arm's length would not have charged interest on the obligation of $1,075,000 incurred by Stonehedge in purchasing Seneca Knolls. And had CCP been dealing with Stonehedge and Seneca at arm's length, it would likely have insisted that they honor their commitments to pay interest annually on the obligations which they incurred in purchasing Henderson Farm and one-half of Preston Farm, respectively; for both corporations were paying interest to others of their creditors while the aforesaid two obligations were outstanding. CCP, however, failed to enforce these commitments, apparently for no other reason than that it was commonly controlled with Stonehedge and Seneca. Petitioners maintain that while ostensibly no interest was paid on the mortgage loans, the price for which the realty was *310 sold included an element of interest. This contention is properly to be sustained only upon a demonstration that in each instance the realty was intentionally sold at a price exceeding its fair market value by the amount of interest that would have accrued at a definite rate over the term of the contract of sale. Elliott Paint & Varnish Co.,44 B.T.A. 241 (1941); Kingsford Co.,41 T.C. 646 (1964). Petitioners have purported to show that Seneca Knolls, Henderson Farm and one-half of Preston Farm were each sold for an amount sufficiently in excess of fair market value to include interest accruable over a 12-year period at 8.5 percent, 7.5 percent and 12 percent, respectively. In our judgment, this evidence does not substantiate petitioners' contention. Of the three contracts of sale, only one provided for payment over a 12-year period, the other two providing for payment over periods of two and five years. [10] Seneca was authorized to prepay its obligation to CCP; had it availed itself of that privilege, however, there would have been no abatement of the purchase price under the terms of the contract of sale. Petitioners, furthermore, have not undertaken *311 to explain in terms of their contention why CCP might have charged differing rates of interest with respect to each of the mortgage obligations; or why two of the contracts of sale were made expressly to provide for the payment of interest over and above the sale price at the annual rate of six percent. We are therefore convinced that in setting the price at which each piece of mortgaged realty was sold by CCP, petitioners did not intend that the price include unstated interest. [11] Accordingly, Decision will be entered for the respondent.
Footnotes
1. Cases of the following petitioners are consolidated herewith: Rocco M. Cappuccilli and Dorothy Cappuccilli, Docket No. 7168-72; and Peter L. Cappuccilli and Grace A. Cappuccilli, Docket No. 7169-72.↩
2. All section references are to the Internal Revenue Code of 1954, as amended.↩
3. Hereinafter "petitioners" shall refer to Gerald Paduano, Rocco Cappuccilli and Peter Cappuccilli, collectively.↩
4. ↩ Farm
Date of Purchase
Purchase Price
Walter
2/22/61
$ 64,065
Commane
10/20/61
71,830
Green
10/26/61
34,788
Patterson
11/24/61
22,400
Higgins
1/3/62
127,000
5. The note afforded Seneca a limited right of prepayment but provided for no abatement in purchase price in the event that right were exercised.↩
6. Prior to January 1, 1967, Stonehedge reduced the principal amount of its mortgage obligations to CCP by $33,150. It made no further payments of principal prior to the foreclosure.↩
7. SEC. 482. ALLOCATION OF INCOME AND DEDUCTIONS AMONG TAXPAYERS. In any case of two or more organizations, trades or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Secretary or his delegate may distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any such organizations, trades, or businesses. Income Tax Regs. adopted pursuant to sec. 482 provide in pertinent part: Sec. 1.482-1(b) Scope and purpose. (1) The purpose of section 482 is to place a controlled taxpayer on a tax parity with an uncontrolled taxpayer, by determining, according to the standard of an uncontrolled taxpayer, the true taxable income from the property and business of a controlled taxpayer. * * * Sec. 1.482-1(a)(6) The term "true taxable income" means, in the case of a controlled taxpayer, the taxable income * * * which would have resulted to the controlled taxpayer, had it in the conduct of its affairs * * * dealt with the other member or members of the group at arm's length. * * * Sec. 1.482-2(a) Loans or advances--(1) In general.↩ Where one member of a group of controlled entities makes a loan or advance directly or indirectly to, or otherwise becomes a creditor of, another member of such group, and charges no interest, or charges interest at a rate which is not equal to an arm's length rate as defined in subparagraph (2) of this paragraph, the district director may make appropriate allocations to reflect an arm's length interest rate for the use of such loan or advance.
8. This Court does not espouse theinterpretation of sec. 482 set forth in B. Forman Company v. Commissioner,453 F.2d 1144 (C.A. 2, 1972), affirming in part and reversing in part 54 T.C. 913 (1970), certiorari denied 407 U.S. 934 (1972). See Kerry Investment Co.,58 T.C. 479 (1972), affirmed in part and reversed in part 500 F.2d 108 (C.A. 9, 1974); Kahler Corp.58 T.C. 496 (1972), reversed 486 F.2d 1 (C.A. 8, 1973); Fitzgerald Motor Co.,60 T.C. 957 (1973), affd. F.2d (C.A. 5, 1975). We shall, however, apply it in this instance. See Jack E. Golsen,54 T.C. 742 (1970), affd. 445 F.2d 985 (C.A. 10, 1971), certiorari denied 404 U.S. 940↩ (1971). 9. Petitioners concede that if interest is properly imputable to CCP under the circumstances obtaining herein, the rate utilized by respondent is appropriate. Respondent has allowed Stonehedge, Seneca and Cappy additional interest deductions for the years in issue in amounts equal to the interest income which he has allocated to CCP under sec. 482↩.
10. Clearly it is irrelevant to the matter in issue that neither of the latter two obligations was in fact timely paid. ↩
11. See by way of contrast Estate of Betty Berry,43 T.C. 723 (1965), affd. per curiam 372 F.2d 476 (C.A. 6, 1967), certiorari denied 389 U.S. 834↩ (1967).