ROBERT A. HENNESSEY AND RITA P. HENNESSEY, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Hennessey v. Commissioner
Docket Nos. 8320-73, 8321-73, 8322-73, 8323-73, 2743-74, 2744-74, 2745-74, 2751-74.
United States Tax Court
T.C. Memo 1977-122; 1977 Tax Ct. Memo LEXIS 322; 36 T.C.M. (CCH) 536; T.C.M. (RIA) 770122; April 27, 1977, Filed *322 Hennessey and M-K are corporations under common control.In the course of business Hennessey performed services for M-K on credit, made cash advances to M-K, and sold M-K real estate on credit. No interest was charged M-K or deducted by M-K as a result of these advances. During the same period Hennessey borrowed money and deducted interest charged therefor. Held, since this case is appealable to the United States Court of Appeals for the Eighth Circuit, we will follow Kahler Corp. v. Commissioner,486 F. 2d 1 (8th Cir. 1973). Golsen v. Commissioner,54 T.C. 742 (1970), affd. 445 F. 2d 985 (10th Cir. 1971), cert. denied 404 U.S. 940 (1971). Therefore, respondent's allocation of interest income to Hennessey was proper even though no income was recognized by M-K as a result of the advances from Hennessey. T. H. Pirnie, for the petitioners. Leonard A. Hammes, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined the following deficiencies in petitioners' Federal income taxes: Petitioners
Year
Amount
Robert G. and
1969
$ 942.00
Rita P. Hennessey
1970
1,138.12
1971
1,030.00
1972
598.00
John P. and
Frances Hennessey
1969
$ 944.00
1970
1,143.54
1971
1,030.00
1972
619.00
Merle Hennessey
1969
$1,096.00
1970
1,466.68
1971
1,185.00
1972
772.00
William R. and
Mary A. Hennessey
1969
$ 944.00
1970
1,352.33
1971
995.00
1972
689.00 The sole issue is whether, under section 482, [2] interest income should be allocated to Hennessey Brothers, Inc., an electing small business corporation, based on accounts receivable owing from its related *324 corporation, Marion-Kenwood Development Company, Inc. FINDINGS OF FACT This case was submitted under Rule 122, Tax Court Rules of Practice and Procedure. The facts were stipulated and are found accordingly. Petitioners, [3] who are brothers, reside in or around Cedar Rapids, Iowa. They timely filed their income tax returns for 1969 through 1972 with the Internal Revenue Service Center, Kansas City, Missouri. During the years in question, petitioners each owned a twenty-five percent interest in Hennessey Brothers, Inc. (hereinafter Hennessey), and in Marion-Kenwood Development Company, Inc. (hereinafter M-K). Hennessey, an Iowa corporation with its principal office in Marion, Iowa, is an electing small business corporation as defined by section 1371(b). During the years in question, it filed its U.S. Small Business Corporation Income Tax Returns, Form 1120S, with *325 the Internal Revenue Service Center, Kansas City, Missouri. Although Hennessey uses an accrual method of accounting to maintain its books, it uses the cash method of accounting, with a fiscal year ending October 31, to report its income. Hennessey's principal business is construction and installation of sewers, paving, and grading. M-K, also an Iowa corporation, maintains its principal office in Marion, Iowa. During the years in question, M-K filed its U.S. Corporation Income Tax Returns, Form 1120, with the Internal Revenue Service Center, Kansas City, Missouri. M-K uses an accrual method of accounting to maintain its books and records and report its income. Its fiscal year ends July 31. M-K's principal business activity is the acquisition, development, and rental of real estate. At all times relevant to this case, Merle Hennessey was president of both corporations. His brothers were the corporations' remaining principal officers. Shortly after its organization in 1955, M-K acquired real estate, referred to as Glenbrook Cove, located near Marion, Iowa, which it intended to develop into a residential area. Initially, M-K planned to divide the real estate into 225 lots. *326 Only 116 lots were eventually platted and recorded, 61 of which have been sold. Hennessey helped M-K develop the Glenbrook Cove real estate by doing grading work, installing streets, sewers, and water mains, advancing M-K money, and selling M-K additional real estate. As a result of this work, much of it done on credit, Hennessey has accounts receivable from M-K of $73,368.00, notes receivable from M-K of $18,660.00, and cash advances to M-K of $45,326.86, for a total of $137,354.86 receivable from M-K. This amount, which has remained unchanged since June 30, 1968, is recorded on M-K's books as accounts payable. Hennessey has never charged M-K any interest on this outstanding balance, and neither Hennessey nor M-K have treated any payments by M-K as interest payments. On June 8, 1964, after M-K started developing Glenbrook Cove, the city of Marion, Iowa, passed a resolution stating that no building permits could be issued in flood plain areas without approval from the Iowa State National Resources Council. In June of 1966, the National Resources Council determined that some, although not all, of the Glenbrook Cove property was in a flood plain area. Building permits covering *327 those lots within the flood plain will not be issued unless M-K elevates the property. Although there have been real estate sales from Glenbrook Cove since the National Resources Council determined that part of the property was in a flood plain, no sales occurred during the years in question. In order to continue its real estate sales, M-K is trying to determine a commercial use for the lots located in the flood plain. During the years in question, M-K's gross income and M-K's and Hennessey's taxable income before net operating loss carryover were: M-K
Hennessey Year
Gross
Taxable
Taxable
1969
$3,056
$ 606
[60,558)
1970
2,695
(517)
410,960
1971
3,080
26
212,242
1972
7,381
1,323
29,483 Hennessey deducted interest in the following amounts attributable to loans from The Farmers State Bank of Marion, Iowa, William Hennessey, and Merle Hennessey: Year
Farmers Bank
William Hennessey Merle Hennessey
1969
$7,660.34
1970
4,352.55
1971
6,232.45
1972
6,991.64
$276.80
$1,557.50
In recomputing Hennessey's taxable income for 1969 and 1970, the Internal Revenue Service increased the corporation's gross income *328 by $6,867.74 per year. For 1971 and 1972, Hennessey's gross income was increased to the rounded-off amount of $6,868 per year. This increase in gross income represents an adjustment for interest income determined by applying a 5 percent interest rate to $137,354.86, the amount M-K owed Hennessey. OPINION During its taxable years ending in 1969, 1970, 1971, and 1972, Hennessey, an electing small business corporation, had accounts receivable from M-K totaling $137,354.86. We must decide whether, based on these accounts receivable, respondent properly allocated interest income to Hennessey from its related corporation M-K. [4] Since this case is appealable to the United States Court of Appeals for the Eighth Circuit, we will apply our rule in Golsen v. Commissioner,54 T.C. 742, 756-758 (1970), affd. 445 F. 2d 985 (10th Cir. 1971), cert. denied 404 U.S. 940 (1971); and follow Kahler Corp. v. Commissioner,486 F. 2d 1 (8th Cir. 1973). Accordingly, we conclude that respondent properly allocated interest income to Hennessey. *329 Section 482 states: In any case of two or more organizations, trades, or businesses * * * owned or controlled directly or indirectly by the same interests, the Secretary or his delegate may distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect income of any such organizations, trades, or businesses. Section 1.482-2(a), Income Tax Regs., indicates that when one member of a group of controlled entities makes a loan or advance to another member of the group without charging interest, the district director may make an appropriate allocation to reflect an arm's length interest rate for such loan. [5] It the creditor is not in the business of making loans, and if no interest was charged, the appropriate arm's length interest rate to be applied before July 24, 1973, is deemed to be 5 percent per year, simple interest, unless the taxpayer can establish a more appropriate interest rate by considering all relevant factors. Sec. 1.482-2(a)(2), Income Tax Regs. Five *330 percent per year, simple interest, on the outstanding balance M-K owes Hennessey is $6,867.74, the amount of interest income respondent has annually allocated to Hennessey. Petitioners contend that it is inappropriate for respondent to allocate any interest income to Hennessey as a result of its accounts receivable from M-K, because this would effectively "create income." Alternatively phrased, petitioners argue that no income was realized by M-K as a result of these advances, and therefore, no income can be allocated from M-K to Hennessey. Initially, we note that the Commissioner's regulations under section 482 specifically provide that income may be allocated from one member of a controlled group to another member even though gross income contemplated from a series of transactions is never realized. Section 1.482-1(d)(4), Income Tax Regs., reads: If the members of a group of controlled taxpayers engage in transactions with one another, the district *331 director may distribute, apportion, or allocate income, deductions, credits, or allowances to reflect the true taxable income of the individual members under the standards set forth in this section and in § 1.482-2notwithstanding the fact that the ultimate income anticipated from a series of transactions may not be realized or is realized during a later period. * * * Similarly, if one member of a group lends money to a second member of the group in a taxable year, the district director may make an appropriate allocation to reflect an arm's length charge for interest during such taxable year even if the second member does not realize income during such year. The provisions of this subparagraph apply even if the gross income contemplated from a series of transactions is never, in fact, realized by the other members. [Emphasis added.] These regulations were specifically approved by the Court of Appeals for the Eighth Circuit, in Kahler Corp. v. Commissioner, 486 F. 2d 1 (8th Cir. 1973). Since appeal in the case before us is to the Court of Appeals for the Eighth Circuit, Kahler Corp. requires that we reject petitioners' creation of income argument. *332 Golsen v. Commissioner. 54 T.C. 742 (1970). In Kahler Corp., a parent corporation borrowed money from banks and deducted the interest charged. The parent corporation in turn made interest-free loans to its subsidiaries. None of the interest expense borne by the parent corporation was charged to the subsidiaries, and none of the subsidiary corporations deducted interest as a result of the parent's loans. The effects of these transactions were that the parent, a high income tax bracket corporation, obtained favorable interest deductions from the bank loans, yet failed to report interest income from the loans to its subsidiaries.Additionally, the subsidiaries, which were generally in a lower income tax bracket than the parent, obtained interest-free loans. The result of these transactions was that the combined tax liability of the parent and subsidiaries was substantially reduced. Similarly, in the case before us, Hennessey borrowed money from The Farmers State Bank, William Hennessey, and Merle Hennessey, and deducted the interest charged. In turn it made advances and loans to M-K, its related corporation. Since no interest was charged for these advances, *333 Hennessey did not report additional interest income. Finally, M-K obtained the use of money and other property interest-free. The net effect, as in Kahler Corp., was a substantial reduction of the combined tax liability of M-K and Hennessey. Given the similarities between Kahler Corp. and the case before us, we believe the Court of Appeals' observation in Kahler Corp.,486 F. 2d at 5, requires that we reject petitioners' creation of income argument. "Whether the Commissioner shows that the borrowed funds actually produced income for the borrowing corporation is of no importance." Therefore, under our rule in Golsen v. Commissioner, supra, we conclude that although respondent's allocation effectively created income, this is not a basis for finding respondent's allocation erroneous. Petitioners' next argument, not entirely distinct from their creation of income argument, is that Hennessey has no reasonable expectation of ever collecting interest on M-K's obligations, and therefore Hennessey need not accrue any interest. Although petitioners on brief disparage the sensibility of an "arm's length" standard for determining an appropriate *334 interest rate, their second argument could be framed alternatively: considering M-K's grave financial situation, no arm's length lender would charge M-K interest on any advances or accounts receivable. See e.g. Chicago & North Western Railway Co. v. Commissioner, 29 T.C. 989 (1958). [6]
Whether Hennessey had a reasonable expectation of collecting interest payments from M-K is a question of fact. Chicago & North Western Railway Co. v. Commissioner, 29 T.C. at 996. After considering all the facts and the entire record presented to us, and after considering petitioners' arguments on brief, we believe that Hennessey has a reasonable expectation of receiving interest payments from M-K. During the years in question M-K's liabilities never exceeded its assets. Furthermore, there is no indication in the record that M-K is considering bankruptcy. During three of the four years in question, M-K had taxable income before the application of a net operating loss. It also had substantial real estate inventories that may be sold in the future. Although the use of some *335 of M-K's Glenbrook Cove property is restricted, and therefore possibly less marketable than other portions of the property, this fact standing alone, does not lead us to change our conclusion that Hennessey has a reasonable expectation of receiving interest payments from M-K. [7]
We have considered petitioners' other arguments and find them unpersuasive. Accordingly, Decisions will be entered for the respondent. Footnotes
1. Pursuant to the parties' joint motion, the following cases were consolidated for purposes of trial, brief, and opinion: John P. Hennessey and Frances Hennessey, docket Nos. 8321-73, 2751-74; Merle Hennessey, docket Nos. 8322-73, 2745-74; and William R. Hennessey and Mary A. Hennessey, docket Nos. 8323-73, 2744-74.↩
2. All statutory references are to the Internal Revenue Code of 1954, as amended.↩
3. Rita P. Hennessey, Frances Hennessey, and Mary A. Hennessey are parties to this action solely because they filed joint income tax returns with their husbands. "Petitioners" hereinafter refers to the male petitioners.↩
4. If we conclude that respondent properly allocated interest income to Hennessey, an electing small business corporation of which petitioners are the only shareholders, then the respondent's determination of petitioners' deficiency must be sustained.↩
5. The phrase "loan or advance" encompasses loans or advances of money as well as indebtedness arising in the ordinary course of business out of sales, leases, or rendition of services. Sec. 1.482-2(a)(3), Income Tax Regs.↩
6. See also Pitchford's Inc. v. Commissioner, T.C. Memo. 1975-75↩.
7. In Liberty Loan Corp. v. United States, 498 F. 2d 225 (8th Cir. 1974), revg. 359 F. Supp. 158 (D.C. Mo. 1973), cert. denied 419 U.S. 1089 (1974), the Court of Appeals held that it was appropriate for the Commissioner to allocate interest income from insolvent subsidiary corporations to a lending parent corporation. If it is reasonable to allocate interest income from insolvent↩ corporations, it is certainly as reasonable to allocate interest income from a solvent corporation such as M-K.